1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BARBARA I. ANTONUCCI (SBN 209039)
bantonucci@constangy.com
NICHOLAS B. MORRELL (SBN 327924)
nmorrell@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
601 Montgomery Street, Suite 350
San Francisco, CA  94111
Telephone:  (415) 918-3000
Facsimile:   (415) 918-3034

KENENTH D. SULZER (SBN 120253)
ksulzer@constangy.com
ANGELA L. RAPKO (SBN 270419)
arapko@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE LLP**
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: 310.909.7775
Facsimile: 424.465.6630

Attorneys for Defendants
HV GLOBAL MANAGEMENT CORPORATION
AND HV GLOBAL GROUP, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON RAMIREZ, individually and on behalf of others members of the general public similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>HV GLOBAL MANAGEMENT CORPORATION, an unknown business entity, HV GLOBAL GROUP, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  5:21-cv-9955<br><br>**DEFENDANTS' HV GLOBAL MANAGEMENT CORPORATION'S AND HV GLOBAL GROUP, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(a)(1), 1332(d)(2), 1441, AND 1446**<br><br>(Removal from Monterey County Superior Court, Case No. 21CV003513)<br><br>[Filed concurrently with the Declaration of Nicholas Morrell and Declaration of Ted Scholz]<br><br>**Complaint Filed:** November 3, 2021 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(a)(1), 1332(d)(2), 1441, and 1446, Defendants HV Global Management Corporation and HV Global Group, Inc., (together, "HV Global" or "Defendants") hereby remove the above-titled action from the Superior Court of the State of California for the County of Monterey to the United States District Court for the Northern District of California. This Court has original federal jurisdiction over this action based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332 and also based on diversity of citizenship pursuant to 28 U.S.C. § 1441(b). In support of such removal, Defendants state the following:

**I.     SUMMARY**

**A.     TIMELINESS OF REMOVAL**

1.     On November 3, 2021, Plaintiff Nelson Ramirez (Plaintiff") commenced the aforementioned lawsuit against HV Global Management Corporation and HV Global Group, Inc. by filing a Complaint in the Superior Court of California for the County of Monterey, titled *Nelson Ramirez v. HV Global Management Corporation* and *HV Global Group, Inc.,* Case No. 21CV003513 (the "State Court Action"). (Declaration of Nicholas Morrell ("Morrell Decl.") ¶ 2.) Plaintiff served Defendants with notice of this action via personal service on November 24, 2021. (Morrell Decl. ¶ 4, Ex. C.)

2.     This Notice of Removal is timely filed within 30 days of service of process on Defendants, which occurred on November 24, 2021. (Morrell Decl. ¶ 4, Ex. C.) *See* 28 U.S.C. §§ 1446(b)(1) and 1453(b).

**B.     VENUE**

3.     Venue is proper in this District, pursuant to 28 U.S.C. §§ 84(b), and 1441(a) and 1446(a), because the State Court Action was pending in the Monterey County Superior Court, which is within the territory of the United State District Court for the Northern District of California – San Jose Division.

**C.      NOTICE TO STATE COURT**

4.      Defendants will serve written notice of the filing of this Notice of Removal to Plaintiff as required by 28 U.S.C. § 1446(d) and will file this Notice of Removal with the clerk of the Superior Court of the State of California in and for the County of Monterey, as further required by that statute.

**II.      JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

5.      This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d)(2).  The district court has original jurisdiction over the action because the action is a class action in which at least one class member is a citizen of a state different from that of the Defendants, the purported class size is in excess of 100 members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost. 28 U.S.C. §§ 1332(d)(2), (d)(4), (d)(5)(B), and (d)(6). Therefore, the action is properly removable pursuant to 28 U.S.C. § 1441(a).

**A.      THIS MATTER WAS BROUGHT AS A CLASS ACTION**

6.      Plaintiff brings this case as a class action. (Morrell Decl. ¶ 2, Ex. A (Complaint).) Plaintiff's Complaint purports to raise the following ten causes of action on behalf of himself and all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime) (*Id.* at ¶¶ 48-56.) , (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums) (*Id.* at ¶¶ 57-.67.), (3) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums) (*Id.* at ¶¶ 68-76.), (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages) (*Id.* at ¶¶ 77-82.), (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid) (*Id.* at ¶¶ 83-88.), (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment)  (*Id.* at ¶¶ 89-94.), (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements) (*Id.* at ¶¶ 95-101.), (8) Violation of California Labor Code § 1174(d) (Failure to Keep Requisite Pay Records) (*Id.* at ¶¶ 102-106.), (9) Violation of California Labor

Code §§ 2800 and 2802 (Unreimbursed Business Expenses) (*Id.* at ¶¶ 107-111.); and (10) Violation of California Business & Professions Code §§ 17200, et seq. (*Id.* at ¶¶ 112-118.). (Morrell Decl. ¶ 2, Ex. A (Complaint).)

7.      Plaintiff seeks damages on behalf of himself and members of the Putative Class ("Putative Class Members"), including unpaid wages and unpaid overtime, premium pay for meal and rest period violations, and damages for the reimbursement for necessary business expenses. (Compl. ¶¶ 56, 67, 76, and 82.) Plaintiff further claims that he and the Putative Class Members are entitled to liquidated damages and a number of statutory penalties. (*Id.* at ¶¶ 88, 94, 101, and 118.) Plaintiff also seeks injunctive relief, restitution, interest, and attorneys' fees and costs. (*Id.* at "Prayer for Relief".)

### B.      THE NUMBER OF PUTATIVE CLASS MEMBERS IS 100 OR GREATER

8.      Plaintiff's Complaint alleges that the membership of the Putative Class "is unknown to Plaintiff at this time; however, the class is estimated to be greater than fifty (50) individuals…" (Compl. ¶ 16.) Defendants' records reflect that the size of the Putative Class during the four-year time period from November 3, 2017 to December 22, 2021 is approximately 260. (Declaration of Ted Scholz ("Scholz Decl."), ¶ 7.)

### C.      DIVERSITY OF CITIZENSHIP

9.      **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff Nelson Ramirez alleges that he is a resident of the State of California, in the County of Monterey. (Compl. ¶ 5, Scholz Decl. ¶12.)  Thus, Plaintiff is a citizen of the State of California.

10.      **Defendant HV Global Management Corporation's Citizenship.**  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court

held that the "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184.  The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

11.     Defendant HV Global Management Corporation is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Florida. (Scholz Decl. ¶ 2, 4.) As a result, Defendant HV Global Management Corporation is a citizen of Delaware and Florida.  28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of any State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.")

12.     **Defendant HV Global Group, Inc.'s Citizenship.** Similarly, Defendant HV Global Group, Inc. is, and was at the time of the institution of this civil action, a corporation organized under the laws of the State of Delaware, having its principal place of business in the State of Florida. (Scholz Decl. ¶ 3, 4.) As a result, Defendant HV Global Group, Inc. is a citizen of Delaware and Florida.  28 U.S.C. § 1332(c).

13.     **Doe Defendants.** Plaintiff has named as defendants "DOES 1 through 100." Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join removal petition).  Indeed, federal courts, unlike California state courts, do not recognize the existence of Doe defendants. *See, e.g., Tolefree v. Ritz*, 382 F.2d 566, 567 (9th Cir. 1967). The existence of Doe defendants 1 through 100, therefore, does not deprive this Court of jurisdiction. Further, pursuant to CAFA, Defendants are not required to obtain the consent of any other defendant to remove this action.  28 U.S.C. § 1453(b).

1

### D.    AMOUNT IN CONTROVERSY

2      14.    Under CAFA, the claims of the individual members in a class action are aggregated

3   to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. §

4   1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA

5   "if the value of the matter in litigation exceeds $5,000,000, either from the viewpoint of the

6   plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*,

7   damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. REP.

8   109-14, at 42.  Moreover, the Senate Judiciary Committee's Report on the final version of CAFA

9   makes clear that any doubts regarding the maintenance of interstate class actions in state or federal

10  court should be resolved in favor of federal jurisdiction.  S. REP. 109-14, at 42-43 ("[I]f a federal

11  court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in

12  the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising

13  jurisdiction over the case…' Overall, new section 1332(d) is intended to expand substantially

14  federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong

15  preference that interstate class actions should be heard in a federal court if properly removed by

16  any defendant.").

17      15.    When the amount in controversy is not apparent from the face of the Complaint, a

18  defendant may state underlying facts supporting its assertion that the amount-in-controversy

19  exceeds the jurisdictional threshold.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

20  The court may also consider facts in the removal petition, and may "require parties to submit

21  summary-judgment type evidence relevant to the amount in controversy at the time of removal."

22  *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010), quoting *Singer v. State*

23  *Farm Mutual Ins.*, 116 F.3d 373, 377 (9th Cir. 1997); *See also Kroske v. U.S. Bank Corp.*, 432

24  F.3d 976, 980 (9th Cir. 2005).  Affidavits can establish particular elements of damages.  *Zacharia*

25  *v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982).

26      16.    Under this approach, and assuming *arguendo* that Plaintiff obtains class certification

27  (which Defendants believe he will not), the alleged amount in controversy in this class action

28  exceeds, in the aggregate, $5,000,000 to a legal certainty.  The Complaint alleges a Putative Class

that consists of "all current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (Compl. ¶ 14.) Accordingly, Plaintiff's alleged putative class consists of all of Defendants' hourly, non-exempt employees employed in the State of California between November 3, 2017 and the present (the "Putative Class Period").

17. The Complaint fails to allege an amount in controversy, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable. (Morrell Decl. ¶ 2, Ex. A.) However, Defendants have conducted its own investigation and review of its employment and payroll records. (Declaration of Ted Scholz ("Scholz Decl.") ¶¶ 1, 4.) Based on this review, it is clear that this action is properly removable under the Class Action Fairness Act because the statute's amount-in-controversy requirement is met. *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove [a CAFA action] . . . on the basis of its own information . . . A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained . . . [b]ut neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on his own.")

18. Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *citing Korn v. Polo Ralph Lauren, Inc.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000).

19. In his Complaint, Plaintiff seeks, among other things, declaratory judgment, injunctive relief, restitution, liquidated damages, premium pay for missed meal and rest periods, wage statement penalties, waiting time penalties, reimbursements for business-related expenses, and pre-judgment and post-judgment interest, attorneys' fees, and costs. (Compl. at "Prayer for

DEFENDANTS' NOTICE OF REMOVAL                                          Case No. 5:21-cv-9955

Relief".)  Defendants deny that Plaintiff is entitled to take anything by way of the Complaint, either on his own behalf or on behalf of the putative classes.  Nevertheless, the amount in controversy is dictated by the extent of Plaintiff's claims, not their merits.  *See Roth v. Comerica Bank.*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is 'put in controversy' by the plaintiff's complaint, not what a defendant will actually owe."), quoting *Korn, supra*, 536 F. Supp. 2d at 1205.

20.    Although Defendants deny all liability, a review of Defendants' employment and payroll records shows that the alleged amount in controversy herein easily exceeds $5,000,000 in the aggregate based on the allegations contained in the Complaint.  As described below, even when *excluding* Plaintiff's claims for injunctive relief, interest and costs, the amount in controversy in this lawsuit is at least **$14,964,207.25**.

21.    The Putative Class.  HV Global Management Corporation manages and operates the Hyatt Residence Club, a company that offers vacation ownership, exchange, rental and resort and property management.  (Scholz Decl. ¶ 5.)   These non-exempt employees who have worked assignments for HV Global Management Corp. in California make up the putative classes in this action.

22.    Defendants' records indicate that during the four years prior to the filing of the Complaint (i.e., November 3, 2017) through December 22, 2021, HV Global Management Corporation employed approximately 260 non-exempt employees in California.  (*Id*. at ¶ 7.) These employees worked approximately a total of about 33,567 workweeks.  (*Id*.)

23.    During the three years prior to the filing of the Complaint (i.e., November 3, 2018) through December 22, 2021, HV Global Management Corporation employed approximately 228 non-exempt employees in California that worked approximately 24,909 workweeks.  (*Id*. at ¶ 8.) Of these 228 non-exempt employees, 88 are former employees who were terminated or resigned during this period.

24.    During the one year prior to the filing of the Complaint (i.e., November 3, 2020) through December 22, 2021, HV Global Management Corporation employed approximately 186 non-exempt employees in California—these employees worked a total of about 8,335 workweeks

8

and 4,167 pay periods.  (Scholz Decl. ¶ 9.)

25.    HV Global Management Corporation's employees in California are paid bi-weekly, at a minimum, and they were paid an average straight-time rate of about $18.96 during the Putative Class Period.  (*Id*. at ¶ 10.)

26.    Because the positions and job duties vary, the schedules worked by HV Global Management Corporation's employees in California vary significantly from employee to employee.  (*Id*. at ¶ 11.)  While these schedules vary, on average employees worked 5 shifts a week and 8 hours per shift.  (*Id*.)

27.    As set forth below, the amount in controversy based on the claims alleged in Plaintiff's Complaint would exceed $5,000,000 as follows:

28.    <u>Plaintiff's Claim for Unpaid Wages</u>: In his First and Fourth causes of action, Plaintiff seeks unpaid overtime and minimum wages pursuant to California Labor Code §§ 510, 1194, 1197, 1197.1 and 1198. (Compl. at ¶¶ 48-56, 77-82.)  Specifically, Plaintiff alleges that he "and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendant," and "…Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned…" (Compl. at ¶¶ 25-26.) California Labor Code § 510 provides that work in excess of eight hours per day and/or 40 hours per week and/or for the first eight hours of the seventh day of work should be compensated at no less than on and on-half (1.5) times the regular rate of pay for the employee.  California Labor Code § 510 also provides that work in excess of twelve hours per day should be compensated at no less than two (2) times the regular rate of pay for the employee.

29.    The statute of limitations of recovery of damages for failure to pay minimum or overtime wages is three years. Cal. Civ. Proc. Code § 338(a).  However, Plaintiff additionally seeks restitution of unpaid wages pursuant to California Business & Professions Code section 17200, et seq. (Compl. ¶¶ 112-118), which has a four year statute of limitations. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) ("We recognize that any

DEFENDANTS' NOTICE OF REMOVAL                    Case No. 5:21-cv-9955

business act or practice that violates the Labor Code through failure to pay wages is, by definition…an unfair business practice… *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.") (Emphasis in original.) Thus, the statute of limitations for Plaintiff's claim for unpaid wages is four years. *See* Cal. Civ. Proc. Code §338(a); Cal. Bus. & Prof. Code § 17207.

30.    As set forth in paragraph 22, *supra*, approximately 260 putative class members worked approximately 167,835 shifts (assuming 5 shifts per week) during the four years prior to the filing of the Complaint through December 22, 2021. Any additional time worked over 8 hours in a day would be paid at an overtime rate equal to at least one and one-half times the straight time rate.

31.    In order to provide as conservative as an estimate as possible, Defendants assume that Putative Class Members worked eight-hour shifts and would be entitled to an additional hour of compensation per shift at an overtime rate of $28.44 (i.e., one and one half times the average regular rate of pay of $18.96 per hour). Assuming Putative Class Members worked an average of 5 days per workweek, the potential amount in controversy for unpaid overtime is at least **$4,773,227.40** (33,567 workweeks x 5 violations/workweek x 1.0 hours x $28.44 (OT) per hour.)

32.    Plaintiff's Claim for Liquidated Damages: In addition to unpaid wages, Plaintiff seeks "liquidated damages in the amount of their unpaid minimum wage" pursuant to Labor Code section 1194.2. (Compl. ¶ 82.) California Labor Code section 1194.2 provides that claims for liquidated damages are subject to the same statute of limitations as that of the claim for underlying wages, which in this case is four years. As set forth above, the amount sought in the form of unpaid minimum wages totals at least $3,182,151.60 of the above unpaid overtime amount. (33,567 workweeks x 5 violations/workweek x 1.0 hours x $18.96 [average hourly rate].) Accordingly, the value of Plaintiff's claim for liquidated damages is also at least **$3,182,151.60**.

33.    Plaintiff's Claim for Meal Period Violations: Plaintiff next generally alleges that Putative Class Members were not provided with compliant, duty-free meal periods in accordance with California law, or meal period premiums in lieu thereof, in violation of Labor Code § 226.7. (Compl. ¶¶ 57-.67.) Specifically, Plaintiff alleges that "Defendants knew or should have known

10

that Plaintiff and the other class members were entitled to receive all meal periods or payments of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay when a meal period was missed, and they did not receive all meal periods or payment of one additional hour of pay at Plaintiff's and the other class member's regular rate of pay when a meal period was missed." (Compl. ¶ 29.) Plaintiff further alleges that "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (*Id.* at ¶ 64.)

34.     Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure section 338(a).  *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th 1094, 1102-14 (2007).  However, Plaintiff additionally seeks meal period premium pay pursuant to California Business & Professions Code sections 17200, *et seq.* (*Id.*, ¶¶ 112-118), the statute of limitations on which is four years.  *Cortez, supra*, 23 Cal.4th at 178-79.  Employees that miss or are otherwise not provided with a compliant, duty-free meal period are entitled to one additional hours' pay at the regular rate of compensation for each workday that the meal period is not provided.  Cal. Labor Code § 226.7(c).

35.     As set forth in paragraph 22, *supra*, approximately 260 Putative Class Members worked approximately 167,835 shifts during the four years prior to the filing of the Complaint through December 21, 2021.  Assuming that Putative Class Members missed or otherwise received, on average, three noncompliant meal periods per workweek for each of the approximately 33,567 weeks worked during the 4 years prior to the filing of the Complaint through December 22, 2021, the amount in controversy as to this claim would be **$1,909,290.96** (33,567 workweeks x 3 violations/workweek x $18.96).

36.     Plaintiff's Claim for Rest Break Violations: Plaintiff similarly alleges that Putative Class Members were generally not provided with duty-free rest breaks in compliance with California law, or rest period premiums in lieu thereof, in violation of Labor Code § 226.7. (Compl. ¶¶ 68-76).  Claims for rest period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a).  *Murphy, supra*, 40 Cal.4th at 1102-14.  However,

11

Plaintiff additionally seeks rest period premium pay pursuant to Business & Professions Code §§ 17200, *et seq.* (Compl., ¶¶ 112-118), the statute of limitations on which is four years. *Cortez, supra,* 23 Cal.4th at 178-79. As with meal period violations, employees that miss or are otherwise not provided with a compliant, duty-free rest period are entitled to one additional hours' pay at the regular rate for each workday that one or more rest periods are not provided. Cal. Labor Code § 226.7(c).

37. Assuming again that Putative Class Members missed or otherwise received three noncompliant rest periods per workweek for each of the approximately 33,567 weeks worked during the 4 years prior to the filing of the Complaint through December 22, 2021, the amount in controversy as to this claim would also be **$1,909,290.96** (33,567 workweeks x 3 violations/workweek x $18.96).

38. <u>Plaintiff's Claim for Waiting Time Penalties</u>: Plaintiff next seeks waiting time penalties pursuant to California Labor Code section 201 through 203. (Compl. ¶¶ 83- 88.) Under Section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty that is equal to their daily wage up to a maximum of thirty (30) days. Cal. Lab. Code § 203. If Plaintiff prevails on this claim on a class-wide basis, each Putative Class Member whose employment was terminated from November 3, 2018 to present could be entitled to up to 30 days' wages.

39. The statute of limitations on this claim is three years regardless of whether a claim under Business and Professions Code § 17200 is alleged. *Pineda v. Bank of America*, 50 Cal.4th 1389 (2010). As set forth in paragraph 23, *supra*, during the three years preceding the filing of the Complaint, approximately 88 hourly employees in California have separated from employment with Defendants. Assuming that these separated hourly employees would be entitled to 8 hours of pay for 30 days in penalties, then potential exposure for the waiting time penalties amounts to **$400,435.20** ($18.96 [average hourly rate] x 8 hours per day x 30 days x 88 separated employees).

40. <u>Plaintiff's Claim for Wage Statement Violations</u>. Plaintiff next seeks statutory penalties for Defendants' alleged failure to provide accurate wage statements in violation of Labor Code § 226. (Compl. ¶¶ 95-101.) Specifically, Plaintiff alleges that by failing to include "the

12

total number of hours worked by Plaintiff and the other class member." (Compl. ¶ 97.) Plaintiff

alleges that this violation was "intentional and willful." (*Id.*) Under Labor Code section 226(e),

an injured employee is entitled to recover the greater of actual damages or penalties of $50 for the

initial pay period in which a violation occurs and $100 for each violation in a subsequent period

(up to an aggregate penalty of $4,000) for a knowing and intentional violation. Cal. Labor Code §

226(e). The statute of limitations to seek penalties for failure to provide accurate wage statements

is one year. Cal. Code Civ. Proc. § 340(a).

41. As set forth above in paragraph 24, *supra*, 186 putative class members worked 8,336

workweeks, or 4,167 pay periods, during the year prior to the filing of the Complaint through

December 22, 2021. Because Plaintiff arguably alleges that the Putative Class Members were, as

a matter of policy and practice, not compensated for all time worked or provided legally compliant

meal and rest breaks, there would presumably be one or more violations in nearly all—if not all—

wage statements provided by Defendants under Plaintiff's theory of the case. Further, Plaintiff

also alleges that Defendants' wage statements failed "to include the total number of hours worked

by Plaintiff and the other class members." (Compl. ¶ 34.) Accordingly, the amount in

controversy as to this claim is at least **$407,400** ((186 initial violations x $50) + (3,981 subsequent

violations x $100)).

42. Reimbursement of Business Expenses. Plaintiff also seeks reimbursement for

expenses allegedly incurred by class members that were "business-related." (*Id.*, at ¶¶ 107-111.)

Assuming each of the 260 employees was owed $100 in reimbursement of expenses, the amount

in controversy is approximately **$26,000.**

43. Attorneys' Fees. Plaintiff additionally seeks attorneys' fees to the extent recoverable

by statute, including Labor Code sections 226(e) and 1194. (*See* Complaint, Prayer for Relief.)

When a party seeks to recover attorneys' fees provided for by statute, these fees—including future

fees—are included in the amount in controversy to reach CAFA's $5,000,000 minimum. *Fritsch

v. Swift Transp. Co. of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 *7 (9th Cir. Aug. 8, 2018)

("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future

attorneys' fees are at stake in the litigation, and must be included in the amount in controversy [in

DEFENDANTS' NOTICE OF REMOVAL                                    Case No. 5:21-cv-9955

a removal under CAFA]"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir.

2007). It is well established in the Ninth Circuit that the benchmark for setting attorneys' fees in

the class action context is 25% of the common fund. *See, e.g., Vizcaino v. Mircrosoft Corp.*, 290

F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998);

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v.*

*Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973

(N.D. Cal. 2001).

44.    Labor Code sections 226(e), and 1194.3 authorize the recovery of reasonable

attorneys' fees in actions for the recovery of unpaid wages and inaccurate wage statements. In

prior class actions, Lawyers *for* Justice, PC has recovered more than 25% of the total amount of

the judgment or settlement. (Morrell Decl. ¶ 7, Ex. E) Assuming that Plaintiff is able to recover

attorneys' fees equal to 25% of the amount recovered for his claims for unpaid wages, meal period

and rest break violations, waiting time penalties, inaccurate wage statements, and business

expenses (excluding any attorneys' fees for injunctive relief or interest), the amount of attorneys'

fees in controversy is at least **$2,356,411.13** (($4,773,227.40 unpaid wages + $3,818,581.92 meal

period and rest break premiums + $407,400 wage statement penalties + $400,435.20 waiting time

penalties + $26,000 business expenses) x 25%).

45.    <u>Total Amount in Controversy</u>. Thus, the amount in controversy in this lawsuit

totals, *at a bare minimum* **$14,964,207.25.**

46.    For all of the foregoing reasons, Defendants respectfully submits that the State Court

Action is removed to this Court under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## III.    JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

47.    This case may be removed pursuant to 28 U.S.C. § 1441(b) because it is a civil

action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, it is

between citizens of different states, and no defendant is a citizen of the State of California.

### A.    DIVERSITY OF CITIZENSHIP

48.    As established in paragraphs in paragraphs 9 through 13, *supra*, Plaintiff is a citizen

of California, whereas neither Defendant is a citizen of California. (Scholz Decl. ¶¶ 2-4, 12) Also,

14

1   the defendants designated as DOES 1 through 100 are fictitious defendants, are not parties to this

2   action, have not been named or served, and are to be disregarded for the purpose of this removal.

3   28 U.S.C. § 1441(a), *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

4   **B.     AMOUNT IN CONTROVERSY**

5       49.     In order to satisfy the $75,000 amount in controversy requirement, the removing

6   party must demonstrate that the amount in controversy "more likely than not" exceeds $75,000.

7   *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

8       50.     A "defendant's notice of removal need include only a plausible allegation that the

9   amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is

10  required by § 1446(c)(2)(b) **only when** the plaintiff contests, or the court questions, the

11  defendant's allegation."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554

12  (2014).  District Court may also consider whether it is facially apparent from the Complaint that

13  the jurisdictional amount is met.  *Singer v. State Farm Mutual Ins. Co.*, 116 F.3d 373, 377 (9th

14  Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indemnity Co.*, 1994 F. Supp. 1196, 1998 (N.D.

15  Cal. 1998).

16      51.     In the present case, Plaintiff asserts ten causes of action, and seeks to recover all of

17  the following: alleged unpaid wages, meal/rest premiums, interest, incurred necessary business

18  expenses, liquidated damages, statutory penalties (including "waiting time" penalties in an amount

19  up to 30 days' pay as a result of allegedly having not been paid all wages he was owed at the time

20  of termination of his employment), costs of suit, and statutory attorneys' fees. (Compl. at "Prayer

21  for Relief".) During his employment with Defendants, Plaintiff worked approximately 98

22  workweeks during the Putative Class Period, and was paid an average hourly rate of $11.00 per

23  hour. (Scholz Decl. ¶ 12.)

24      52.     As set forth below, the amount in controversy based on the claims alleged in

25  Plaintiff's Complaint would exceed $75,000.00 as follows:

26      53.     <u>Plaintiff's Claim for Unpaid Wages:</u> As established in paragraphs 28 through 31,

27  *supra*, Plaintiff seeks damages based on his claim for unpaid wages. Here, based on Plaintiff's

28  Complaint and payroll records, Defendants assume that Plaintiff worked eight-hour shifts and

15

would be entitled to an additional hour of compensation per shift at an overtime rate of $16.50 (i.e., one and one half times the average regular rate of pay of $11.00 per hour). Assuming Plaintiff worked an average of 5 days per workweek, the potential amount in controversy for unpaid wages is at least **$8,085.00** (98 workweeks x 5 violations/workweek x 1.0 hours x $16.50).

54.    Plaintiff's Claim for Liquidated Damages: Plaintiff seeks "liquidated damages in the amount of their unpaid minimum wage" pursuant to Labor Code section 1194.2, which provides that claims for liquidated damages are subject to the same statute of limitations as that of the claim for underlying wages, which in this case is four years. As set forth above, the amount sought in the form of unpaid minimum wages totals at least $5,390.00 of the total overtime amount of $8,085.00. Accordingly, the value of Plaintiff's claim for liquidated damages is also at least **$5,390.00**.

55.    Plaintiff's Claim for Meal Period Violations: As established in paragraphs 34 through 35, *supra*, Plaintiff generally alleges that he was not provided with compliant, duty-free meal periods in accordance with California law, or meal period premiums in lieu thereof, in violation of Labor Code section 226.7. Assuming that Plaintiff missed or otherwise received, on average, five noncompliant meal period per workweek for each of the approximately 98 weeks he worked during the 4 years prior to the filing of the Complaint, the amount in controversy as to this claim would be **$5,390.00** (98 workweeks x 5 violations/workweek x $11.00).

56.    Plaintiff's Claim for Rest Break Violations: Similarly, as established in paragraphs 36 through 37, *supra*, Plaintiff generally alleges that he was not provided with compliant, duty-free rest breaks in accordance with California law, or rest break premiums in lieu thereof, in violation of Labor Code section 226.7. Assuming that Plaintiff missed or otherwise received, on average, five noncompliant rest breaks per workweek for each of the approximately 98 weeks he worked during the 4 years prior to the filing of the Complaint, the amount in controversy as to this claim would be **$5,390.00** (98 workweeks x 5 violations/workweek x $11.00).

57.    Plaintiff's Claim for Waiting Time Penalties: As established in paragraphs 38 through 39, Plaintiff also seeks waiting time penalties pursuant to California Labor Code sections 201 through 203. (Compl., ¶¶ 83-88.) Assuming that Plaintiff would be entitled to 8 hours of pay

16

1   for 30 days in penalties, then the amount in controversy as to this claim would be **$2,640.00**

2   ($11.00 [average hourly rate] x 8 hours per day x 30 days).

3       58.   <u>Plaintiff's Claim for Inaccurate Wage Statements</u>: As established in paragraphs 40

4   through 41, *supra*, Plaintiff next seeks statutory penalties for Defendants' alleged failure to

5   provide accurate wage statements in violation of Labor Code section 226 (Compl. ¶¶ 95-101.),

6   which provides that an injured employee is entitled to recover the greater or actual damages or

7   penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation

8   in a subsequent period (up to an aggregate penalty of $4,000) for a knowing and intentional

9   violation.  Cal. Labor Code § 226(e).  The statute of limitations to seek penalties for failure to

10  provide accurate wage statements is one year.  Cal. Code Civ. Proc. § 340(a). Because Plaintiff

11  did not work for Defendants during the one year preceding the filing of the Complaint, Defendants

12  deny that Plaintiff is entitled to any wage statement violation penalties. Thus, for purposes of this

13  Removal, Defendants do not attribute any wage statement violations because Plaintiff did not

14  work in the year preceding the filing of the Complaint.

15      59.   <u>Plaintiff's Claim for Unpaid Business Expenses</u>: As established in paragraph 42,

16  *supra*, Plaintiff also seeks reimbursement for expenses allegedly incurred by himself that were

17  "business-related."  (Compl., ¶¶ 107-111.)  Given the vagueness of these allegations, Defendants

18  assume for the purposes of this petition that the amount in controversy as to this claim is also

19  **$100.**

20      60.   <u>Plaintiff's Claim for Attorneys' Fees</u>: Finally, Plaintiff seeks attorneys' fees to the

21  extent recoverable by statute. (*See* Complaint, Prayer for Relief.)  In determining whether the

22  amount in controversy exceeds $75,000, this Court may estimate the amount of reasonable

23  attorneys' fees Plaintiff will incur through trial. *See Galt v. JSS Scandinavia*, 142 F.3d 1150,

24  1155-57 (9th Cir. 1998) (holding that attorneys' fees may be taken into account to determine

25  jurisdictional amounts "if a statute authorizes fees to a successful litigant."); *see also Brad v.*

26  *Mercedes USA, Inc.* 243 F. Supp. 1004, 1010-11 (N.D. Cal. 2002). "[T]he Court can use its

27  discretion to determine, within its own experience, that an award of attorneys' fees alone will

28  satisfy the amount in controversy requirement." *Cain v. Hartford Life & Accident Ins.*, 890 F.

17

Supp. 2d 1246, 1249 (C.D. Cal. 2012). Indeed, attorneys' fees tend to be high in employment law cases. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (noting that in the court's experience, attorneys' fees in employment law cases often exceed the damages).

61.     Assuming a reasonable rate of $400 per hour, Plaintiff's counsel would only need to spend about 187.5 hours (about 4.68 weeks) litigating this matter to incur $75,000 in attorneys' fees ($400/hour x 187.5 hours = $75,000). *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 225 (9th Cir. 2013) (finding that an attorneys' fees award for 1,610.8 total billable hours was reasonable where counsel argued multiple single-plaintiff employment claims through trial).

62.     <u>Summary of Amount in Controversy:</u>  Although Defendants deny Plaintiff's factual allegations or that he is entitled to the relief for which he has prayed, based on Plaintiff's allegations and prayer for relief, the amount in controversy clearly exceeds the $75,000 threshold set forth under 28 U.S.C. § 1332(a).  Based on the calculations outlined above, the approximate amount in controversy is as follows: (a) Unpaid Wages and Liquidated Damages: at least **$13,475.00**; (b) Meal Period and Rest Break Violations - **$10,780.00**  Waiting Time Penalties - **$2,640.00**; and (c) Attorneys' Fees – at least **$75,000**. These amounts total to **<u>$101,895.00</u>**, which exceeds the jurisdictional minimum.

63.     In compliance with 28 U.S.C. § 1446(a), true and correct copies of all state court "process, pleadings, and orders" are attached as Exhibits A through D to the Declaration of Nicholas Morrell.

64.     **WHEREFORE**, Defendants requests that the above action pending before the Superior Court of the State of California for the County of Monterey be removed to the United States District Court for the Northern District of California.

Dated:  December 22, 2021          CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By: */s/ Nicholas B. Morrell*
    Barbara I. Antonucci
    Kenneth D. Sulzer
    Nicholas B. Morrell
    Angela L. Rapko
    Attorneys for Defendant
    HV GLOBAL MANAGEMENT CORPORATION and
    HV GLOBAL GROUP, INC.