**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NELSON RAMIREZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HV GLOBAL MANAGEMENT CORPORATION, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-09955-BLF<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>[Re: ECF No. 13] |

Plaintiff Nelson Ramirez filed this action against Defendants HV Global Management Corporation and HV Global Group, Inc., alleging ten causes of action for violation of the California Labor Code and Business & Professions Code. *See* ECF No. 1 (Notice of Removal and Complaint). Now before the Court is Ramirez's motion to remand for lack of subject matter jurisdiction. ECF No. 13 ("Mot."). Ramirez argues that Defendants have not demonstrated that the amount-in-controversy exceeds $5 million under the jurisdictional requirements of the Class Action Fairness Ac, 28 U.S.C. § 1332(d). Defendants oppose the motion. ECF No. 19 ("Opp."). The Court found the motion suitable for disposition without oral argument and vacated the May 5, 2022 hearing. *See* ECF No. 31. For the following reasons, the Court DENIES the motion to remand.

**I.　BACKGROUND**

As alleged in the operative complaint, Defendants employed Ramirez as a non-exempt employee from September 2010 to September 2019 and during that time failed to compensate him for hours he worked and missed meal periods and rest breaks. Compl. ¶ 20. Ramirez seeks to represent a class of all current and former hourly-paid and non-exempt employees who worked for Defendants in California in the last four years. *Id.* ¶ 14. Ramirez brings nine claims under the

California Labor Code and one claim under California's Unfair Competition Law. *See id.* ¶¶ 48–118. Ramirez specifies in his complaint that his individual claim is less than $75,000. *Id.* ¶ 1.

## II. LEGAL STANDARD

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), federal courts have original jurisdiction over state law actions where (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the number of members of all proposed plaintiff classes in the aggregate is more than 100; and (3) where any member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d). Typically, courts strictly construe the removal statute against removal jurisdiction. *See, e.g.*, *Provicial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008). However, "'no antiremoval presumption attends cases invoking CAFA,' in part because the statute was enacted 'to facilitate adjudication of certain class actions in federal court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992–93 (9th Cir. 2022) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

In seeking removal under CAFA, the removing party bears the burden of establishing federal jurisdiction. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The removing party must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)). The removing party must also establish that the number of class members exceeds 100 and minimal diversity exists between the parties. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

When a party moves to remand under CAFA, they present either a "facial" attack or a "factual" attack on the removing party's showing of jurisdictional elements. "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). In contrast, a factual

2

attack "contests the truth of the . . . allegations, usually by introducing evidence outside the pleadings." *Id.* (citing *Salter*, 974 F.3d at 964). When the removing party is presented with a facial attack, the Court applies a weaker evidentiary standard; in those cases, a removal "need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." *Salter*, 974 F.3d at 963 (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)) (internal quotation marks omitted). When faced with a factual attack, the Court applies a stronger evidentiary standard. The removing party "must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context." *Id.* at 963 (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)); *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987); Fed .R. Civ. P. 56(c)).

### III. DISCUSSION

At issue in this motion to remand is whether this Court has removal jurisdiction pursuant to CAFA.[1] Plaintiff challenges only Defendants' showing on CAFA's $5 million amount-in-controversy requirement. In their notice of removal, Defendants allege that the total amount-in-controversy is $14,964,207.25. NOR ¶ 45. In their opposition brief, Defendants say that even with much lower assumed violation rates, the amount in controversy is still at least $6,138,726.71, "well in excess of CAFA's $5 million jurisdictional minimum." Opp. at 10. Plaintiff disputes each category of calculations underlying these alleged amounts-in-controversy. The Court evaluates each in turn, but first confronts the impact of a recent Ninth Circuit decision in this area.

#### A. *Jauregui*

After briefing had concluded, the Ninth Circuit issued a published decision in *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022). The Court requested supplemental briefing from the parties on the impact of *Jauregui* on this case, including specifically whether Plaintiff should be required to refile his motion to remand to "make[] arguments consistent with

---

[1] Plaintiff also disputed that this Court has removal jurisdiction under 28 U.S.C. § 1332(a), as this was one basis Defendants identified for this Court's jurisdiction in their notice of removal. *See* Mot. 9–10; ECF No. 1 ("NOR") at 14. Defendants do not defend § 1332 as a basis for removal in their opposition to remand, so that basis for removal is waived and the Court does not discuss it.

3

*Jauregui*." ECF No. 26. While the parties disagree about the impact of *Jauregui*, they agree that Plaintiff's motion should not be revised and refiled. *See* ECF Nos. 29 at 1, 30 at 1. The Court will accordingly evaluate Plaintiff's motion as-filed with the benefit of additional guidance from *Jauregui*.

In *Jauregui*, the Ninth Circuit confronted an appeal from a district court's order remanding a wage-and-hour class action to state court. Defendant Roadrunner Transportation Services had originally removed the case to federal court under CAFA, and plaintiff Jauregui had responded with a motion to remand arguing that the $5 million amount-in-controversy requirement was not met. *Jauregui*, 28 F.4th at 991. Roadrunner responded with a declaration from its senior payroll lead "who concluded that, based on the company's payroll data and [Jauregui's] allegations, the amount in controversy was $14,780,377.06." *Id.* The district court granted the motion to remand, finding that Roadrunner did not meet its burden. *Id.* The district court evaluated the calculations for each of the seven alleged violations, finding the claimed amount-in-controversy substantiated for only two of the claims. *Id.* at 992. For the remaining five claims, the district court disagreed with assumptions and variables underlying Roadrunner's calculations, and thus "assigned a $0 value" to those claims for amount-in-controversy purposes. *Id.* The district court thus concluded that the amount-in-controversy was only $2.1 million, below the $5 million CAFA threshold. *Id.*

The Ninth Circuit reversed, finding two problems with the district court's analysis. First, the Ninth Circuit found that the district court improperly imposed "a presumption against CAFA's jurisdiction." *Jauregui*, 28 F.4th at 993. Because "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee*, 574 U.S. at 89, the district court's different standard resulted in "an inappropriate demand of certitude from Roadrunner over its assumptions used in calculating the amount in controversy." *Jauregui*, 28 F.4th at 993. This caused the district court to improperly reject or discount some of Roadrunner's assumptions and dismiss its estimates for certain claims. *Id.* Second, the district court erred by assigning a $0 value to five of the seven claims in the lawsuit simply because it disagreed with some of the assumptions underlying the calculations. *Id.* at 994. "[I]f a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that

4

claim a $0 value." *Id.* Instead, the district court assigned a $0 value to a claim where the court "identified other assumptions that it concluded were better." *Id.* "[A]t most," the court should have "reduce[d] the claim to the amount resulting from the alternative assumption." *Id.* A district court may be justified in zeroing out a claim "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative." *Id.* at 996. Otherwise, where an alternative assumption is available and reasonable, "the district court should consider the claim under the better assumption." *Id.*

*Jauregui* informs the Court's analysis of several threshold issues raised by the parties. First, and contrary to Plaintiff's argument otherwise, there is no presumption against removal in a CAFA case. *Jauregui*, 28 F.4th at 993; *contra* Mot. at 2. Second, and again contrary to Plaintiff's argument otherwise, a declaration submitted by a company employee attesting to a review of business records can constitute competent evidence supporting amount-in-controversy calculations. *Jauregui*, 28 F.4th at 992; *see also Brown v. Janus of Santa Cruz*, 2021 WL 3413349, at *3 (N.D. Cal. Aug. 5, 2021) (citing cases); *contra* Mot. at 4–5. And third, if the Court disagrees with an assumption that underlies Defendants' calculations on a claim, the Court will "consider the claim under [a] better assumption" if a better assumption can be identified. *Jauregui*, 28 F.4th at 996. Indeed, Defendants provide alternative assumptions themselves in their opposition to the motion to remand that the Court will consider in analyzing the amount-in-controversy.

### B. Amount-in-Controversy

With those principles in mind, the Court examines Defendants' evidence and assumptions for each category of amount-in-controversy. The Court first notes that Plaintiff mounts a factual attack in its motion to remand because Plaintiff has "challenge[d] the truth of [Defendants'] jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris*, 980 F.3d at 700 (citing *Salter*, 974 F.3d at 964). Defendants thus have the burden to support their "jurisdictional allegations with competent proof" and establish that this case meets CAFA's jurisdictional minimum "by a preponderance of the evidence." *Id.* at 701 (citing *Salter*, 974 F.3d at 964); *see also Jauregui*, 28 F.4th at 994.

Indeed, Defendants appear to have treated the attack as factual, given that Mr. Scholz supplemented his initial declaration with an additional declaration "supporting some of [Defendants'] assumptions" made in their notice of removal. *Id.* at 701 (noting submission of supplemental declaration). Thus, Defendants' calculations and assumptions are supported by two declarations from Ted Scholz, the Vice President of Human Resources, who says that he analyzed reports prepared by his Human Resources team from Defendants' employment records to derive the relevant data. ECF No. 19-1 ("Scholz Supp. Decl.") ¶¶ 1–2; *see also* ECF No. 1-2 ("Scholz Decl.") ¶ 5 (reviewed "employment and payroll records maintained by Defendants").

### i. Overtime and Regular Wages

Plaintiff's first and fourth claims are for unpaid overtime and minimum wages under Cal. Lab. Code §§ 510, 1194, 1197, 1197.1, and 1198. Compl. ¶¶ 48–56, 77–82. In their notice of removal, Defendants allege that $4,773,227.40 is in controversy from overtime and unpaid wages. NOR ¶ 31. This figure assumes a 100% violation rate—that is, that for each shift worked, every worker went unpaid for a single hour of overtime or regular wages. *Id.* In its motion to remand, Plaintiff objects to a 100% violation rate on several grounds. Mot. at 5–6. In their opposition, Defendants back off a 100% violation rate and assume a far more conservative 25% violation rate for overtime and a 25% violation rate for regular wages. Opp. at 5–6. The Court first considers the appropriate violation rate and then delves into Plaintiff's other objections.

The violation rate inquiry is fact-specific; the Ninth Circuit allows a 100% violation rate to be assumed in some cases, *see LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015), but has found the assumption unwarranted in other cases, *see Ibarra*, 775 F.3d at 1199–1200. A party removing pursuant to CAFA may assume a 100% violation rate when that assumption is "supported directly by, or reasonably inferred from, the allegations in the complaint." *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) (quoting *Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014)) (internal quotation marks omitted). This rule of thumb is refined by the Ninth Circuit's finding in *Ibarra* that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." 775 F.3d at 1198–99 (emphasis in original).

6

A defendant must show that a reasonable reading of the complaint could place an hour of unpaid overtime or wages at issue per shift by all class members in controversy. *Cortez*, 2019 WL 955001, at *5. In this case, Defendants' assumption of a 100% violation rate is not "reasonable." While Plaintiff states in some places in the Compliant that Defendants engaged in a "pattern and practice of wage abuse," Compl. ¶¶ 25–26, engaging in a "pattern or practice" does not mean that a violation occurred in 100% of all shifts. *See Ibarra*, 775 F.3d at 1198-99 (finding that a "'pattern and practice' of doing something does not necessarily mean always doing something"). Indeed, district courts in the Ninth Circuit regularly find that a "uniform policy" does not imply a 100% violation rate. *See, e.g.*, *Brown*, 2021 WL 3413349, at *5 (citing cases). District courts in this circuit have found violation rates ranging from 20% to 60% more appropriate. *See Alvarez v. Off. Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate); *Brown*, 2021 WL 3413349, at *6–7 (25% violation rate); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *4 (N.D. Cal. Jun. 28, 2021) (20% violation rate). Because the Court rejects the 100% violation rate from Defendants' notice of removal, it must look for a reasonable "alternative assumption" as a basis for recalculation. *Jauregui*, 28 F.4th at 994. Defendants provide a reasonable alternative assumption: the 25% violation rate, which is at the low end of the violation rates that courts in this circuit have found acceptable. The Court will assume a 25% violation rate for both overtime wages and regular wages.

Plaintiff objects to the foundation of Defendants' other datapoints underlying this calculation. Plaintiff first complains that Defendants did not provide "one single supporting business record, spreadsheet, or other document" supporting the number of employees, the number of workweeks, the $18.96 average hourly rate, the 5 shifts per week and 8 hours per shift, and the number of separated employees in the relevant time period. Mot. at 4. The Court finds that requiring Defendants to provide underlying documentation supporting these assumptions asks too much at this stage of the case. The Court is satisfied that Mr. Scholz is qualified to render these opinions as the Vice President of Human Resources. Scholz Decl. ¶ 1. He sufficiently describes his methods for obtaining each of the pieces of data described above that comprise Defendants' calculations, which are based on his personal knowledge of Defendants' payroll and employment

7

1  databases. The Court will not modify these reasonable assumptions. *Jauregui*, 28 F.4th at 992.

2  Plaintiff also objects to Defendants' inclusion of part-time workers in their calculation of
3  the number of relevant workweeks, and that those part-time workers would not be subject to
4  overtime penalties. Mot. at 5.[2] Defendants' respond that only 6.2% of the workweeks were
5  worked by part-time employees, and that part-time employees can still be entitled to overtime.
6  Opp. at 5 (citing Scholz Supp. Decl. ¶¶ 3–4). The Court finds that no adjustment to the calculation
7  is warranted simply because some part-time employees are included in the number of workweeks.
8  Any slight overinclusiveness resulting from inclusion of workweeks worked by part-time
9  employees is offset by an assumed violation rate on the lower end of the range courts in this
10 circuit have found acceptable.

11 Accordingly, the Court finds that Defendants' revised calculations for the amount-in-
12 controversy for overtime and regular wages are based on reasonable assumptions. The
13 calculations are reproduced below.

14 <u>Overtime</u>: 33,567 workweeks $\times \frac{1.25 \text{ hours}}{1 \text{ workweek}} \times \frac{\$18.96}{1 \text{ hour}} \times 1.5$ overtime hrly. rate = \$1,193.306.85

15 <u>Regular Wages</u>: 33,567 workweeks $\times \frac{1.25 \text{ hours}}{1 \text{ workweek}} \times \frac{\$18.96}{1 \text{ hour}}$ = \$795,537.90

16

17     **ii.  Liquidated Damages**

18 Defendants also provide calculations for the amount-in-controversy for Plaintiff's claim for
19 liquidated damages "in the amount of their unpaid minimum wage pursuant to Labor Code section
20 1194.2." NOR ¶ 32 (citing Compl. ¶ 82). As Defendants say, courts have approved use of the
21 average minimum wage during the relevant putative class period to estimate liquidated damages.
22 *See Rodriguez v. URS Midwest, Inc.*, 2021 WL 289354, at *1 (C.D. Cal. Jan. 27, 2021). That
23 average minimum wage was \$12.47. Plaintiff does not object to this average minimum wage;
24 indeed, his objections to the liquidated damages calculations rest solely on objections to the
25 number of workweeks that the Court has already resolved. Accordingly, the Court finds that
26 Defendants' revised calculations of the amount-in-controversy for liquidated damages in their

27 ―――――――――――――
28 [2] Plaintiff's objection regarding part-time employees also applies to calculations for the meal break, rest break, and waiting time claims. Reply at 4.

1  opposition brief—which are based on the same 25% violation rate approved above—are
2  reasonable.

3  Liquidated Damages:  33,567 workweeks $\times \frac{1.25 \text{ hours}}{1 \text{ workweek}} \times \frac{\$12.47}{1 \text{ hour}}$ = $523,225.61

### iii. Meal and Rest Break Violations

Plaintiff also alleges that Defendants did not provide members of the putative class with required meal and rest breaks in violation of Cal. Lab. Code §§ 226.7.  Compl. ¶¶ 57–76.  In their notice of removal, Defendants allege that $3,818,581.92 is in controversy for meal and rest break violations (equally split between meal breaks and rest breaks).  NOR ¶¶ 35, 37.  Defendants assume a 60% violation rate in their notice of removal—*i.e.*, three noncompliant meal periods and three noncompliant rest periods per workweek per employee, paid out at the statutorily-required one hour of pay per violation.  *Id.* ¶¶ 34, 36.  Plaintiff makes the same objections to these calculations: that Defendants do not provide underlying documents and that the violation rate assumed is too high.  Mot. at 6–7.  In opposition, Defendants defend their assumption of a 60% violation rate, but again offer an alternative assumption of a 25% violation rate (1.25 meal period and 1.25 rest break violations per week per employee).  Opp. at 7–8.

The Court finds that Defendants' alternative assumption—a 25% violation rate—is reasonable.  This Court has previously found a 50% violation rate for meal and rest break violations reasonable in a case with similar allegations of a "pattern or practice" of meal and rest break violations.  *See Brown*, 2021 WL 3413349, at *5.  Other courts have agreed and found a range of 25% to 60% to be reasonable.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (60% violation rate for meal periods and 30% violation rate for rest periods); *Alvarez*, 2017 WL 5952181, at *3 (60% rate for both claims).  The Complaint offers little guidance for Defendants to make assumptions about Plaintiff's allegations, using only the vague "pattern or practice" language.  Defendants' assumptions underlying the violation rate—which is again at the low end of what courts have found reasonable—are justified.  Accordingly, the Court accepts their calculations:

Meal Periods: 33,567 workweeks $\times \frac{1.25 \text{ violations}}{1 \text{ workweek}} \times \frac{\$18.96}{1 \text{ violation}} = \$795,537.90$

Rest Periods: 33,567 workweeks $\times \frac{1.25 \text{ violations}}{1 \text{ workweek}} \times \frac{\$18.96}{1 \text{ violation}} = \$795,537.90$

### iv. Waiting Time Penalties

Plaintiff next makes a claim for waiting time penalties under Cal. Lab. Code §§ 201–203. Compl. ¶¶ 83–88. In their notice of removal, Defendants claim that $400,435.20 is in controversy over Plaintiff's claim for waiting time penalties. NOR ¶ 39. In this claim, Plaintiff seeks penalties under California Labor Code sections 201–203 for Defendants' alleged failure to pay all wages owed to terminated employees at the time of separation. Cal. Lab. Code § 203. The penalty is up to 30 days' wages. *Id.* Defendants assume that all 88 of the separated hourly employees during the statute of limitations period would be entitled to 30 days' pay of 8 hours per day—a 100% violation rate. NOR ¶ 39. Plaintiff says that a 100% violation rate is unreasonable because Defendants provide no evidence supporting that assumption. Mot. at 7.

This Court has previously found reasonable a 100% assumed violation rate for waiting time penalties where the complaint at issue contained no guidance on the extent of the violations the plaintiff was alleging. *See Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *5–6 (N.D. Cal. June 28, 2021) (citing *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *6 (N.D. Cal. Oct. 25, 2019)); *accord Ford v. CEC Ent., Inc.*, 2014 WL 337790, at *3 (N.D. Cal. Jul. 10, 2014) (100% violation rate); *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) (allowing 100% violation rate assumption where complaint did not "allege a more precise calculation"). Some other courts have rejected an assumption of a 100% violation rate. *Beck v. Saint-Gobain Containers, Inc.*, 2016 WL 4769716, at *11 (C.D. Cal. Sep. 12, 2016).[3]

Given the weight of the case law, the Court would be in good company in finding a 100% violation rate to be reasonable and supported by a preponderance of the evidence. The Court

---

[3] Plaintiff cites to two Ninth Circuit cases—one of which has been largely overruled, *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007), *overruling recognized in Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 48 (9th Cir. 2018); and the other of which is an unpublished and thus non-precedential decision, *Garibay v. Archstone Cmty.*, 539 F. App'x 763 (2013). The Court will accord *Garibay* the merely persuasive value to which it is entitled.

1     notes, however, that Defendants provide little justification for assuming a 100% violation rate.
2     The Court finds it highly unlikely that each of the 88 hourly employees who separated from
3     employment from Defendants during the relevant period was entitled to 8 hours of pay for 30 days
4     in penalties. While the Court will not zero out the claim, *Jauregui*, 28 F.4th at 992, the Court will
5     instead assume a 25% violation rate, as Defendants urge for other claims. This results in an
6     amount-in-controversy of $100,108.80 for this claim:

7     <u>Waiting Time Penalties</u>:  88 separated emps. $\times \frac{8 \text{ hours}}{1 \text{ day}} \times \frac{\$18.96}{1 \text{ hour}} \times 30 \text{ days} \times 0.25 = \$100,108.80$

### v.    Wage Statements

Plaintiff further seeks statutory penalties for failure to provide accurate wage statements in violation of Cal. Lab. Code § 226. Compl. ¶¶ 95–101. The statute proscribes damages of the greater of (1) actual damages or (2) $50 for the initial pay period and $100 for each subsequent pay period in which a violation occurs, up to an aggregate penalty of $4,000. Cal. Lab. Code § 226(e). Defendants assume that "this claim applies to each putative class member . . . given the broad allegations in the Complaint" for each of Plaintiff's other claims, resulting in an amount-in-controversy of $407,400 for this claim. NOR ¶ 41; Opp. at 9. Plaintiff argues against a 100% violation rate, saying that the allegations of the Complaint do not suggest that every single wage statement of every employee was deficient. Mot. at 7–8.

The Court agrees with Plaintiff that assuming a 100% violation rate is not appropriate. As with Defendants' calculation of waiting time penalties, they provide little justification for assuming a 100% violation rate. While it is true that Plaintiff's allegations of Labor Code violations are extensive, that does not justify assuming the every wage statement of every single employee during the relevant time period was inaccurate. The Court, however, declines again to zero-out this claim because Plaintiff's Complaint does allege extensive violations of the Labor Code that would result in inaccurate wage statements for at least a significant portion of employees. The Court will use the same 25% violation rate assumption that Defendants have urged for other claims. This results in an amount-in-controversy for this claim of $101,850 for the 186 employees and 4,167 pay periods at issue:

11

Wage Statements: $((186 \text{ initial violations} \times \$50) + (3{,}981 \text{ sub. violations} \times \$100)) \times 0.25 = \$101{,}850$

### vi. Business Expense Reimbursements

Plaintiff seeks reimbursement of expenses incurred by putative class members that were "business-related." Compl. ¶¶ 107–111. Defendants assume that each of the 260 employees in the putative class incurred $100 in business expenses, resulting in an amount-in-controversy of $26,000 for this claim. NOR ¶ 42. Plaintiff urges the Court to zero-out this claim because Defendants have offered no facts or evidence supporting the $100 per employee figure, Mot. at 8, while Defendants defend their estimate as "reasonable," Opp. at 9.

The Court finds that, unlike for the other calculations, Defendants have provided no facts or evidence supporting their estimate of $100 per employee in business expenses. For each of its other calculations, Defendants identified at least some factual basis for making an estimation or reduced their violation rate to account for a significant proportion of non-violations. Here, however, Defendants have done neither. As Plaintiff argues, Defendants no doubt have access to records of reimbursed business expenses that could have provided at least some factual basis for assumptions about (1) how many employees incurred business expenses at all and (2) how much each of those employees should be assumed to have spent. Even a statement in Mr. Scholz's declration attesting to a review of relevant records and some data points underlying this estimate may have been sufficient, but Defendants provide neither. The Court will elect to zero-out this claim, as contemplated in *Jauregui*. *See* 28 F.4th at 994 ("Of course, if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value.").[4]

### vii. Attorneys' Fees

Defendants include attorneys' fees of 25% of the amount-in-controversy for the underlying

---

[4] Additionally, given the Court's approval or modification of other amount-in-controversy calculations, the amount-in-controversy for this claim becomes immaterial to whether the Court has jurisdiction over this case.

claims as part of their calculations, amounting to $2,356,411.13 in their notice of removal. NOR ¶ 44. Based on Defendants' reduced amount-in-controversy estimates in their opposition to remand, the attorneys' fees come to $1,227.745.34. Opp. at 9–10. Plaintiff urges the Court to entirely decline to include attorneys' fees in the amount-in-controversy because Defendants' fees calculation is "based on flawed calculations" for the other claims. *See* Mot. at 8–9; Reply at 5.

The Court will not zero-out Defendants' attorneys' fees calculations for the amount-in-controversy. While *Jauregui* does not specifically address attorneys' fees, the Ninth Circuit has been clear that attorneys' fees are appropriately included in amount-in-controversy calculations under CAFA, and the Court thus applies *Jauregui*'s admonition against zeroing out claims to this instance. *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018); *contra* Mot at 9 (citing pre-*Jauregui* case law that zeroed out attorneys' fees calculations for amount-in-controversy). The Court also agrees with Defendants' estimate of a 25% attorneys' fee recovery. A 25% fee recovery is the "benchmark" level for reasonable attorneys' fees in class action cases. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). While Plaintiff is correct that there is no per se rule that 25% is the appropriate amount of fees, *see* Mot. at 9 (citing *Arias v. Residence Inn*, 936 F.3d 920, 928 (9th Cir. 2019)), and any eventual attorneys' fees award would be subject to the Court's discretion, the Court finds that the "benchmark" fees recovery is the appropriate estimate in this case.[5]

With the Court's revisions to the amounts-in-controversy for the above claims, the attorneys' fees calculation is as follows:

<u>Fees</u>: ($1,193,306.85 + $795,537.90 + $523,225.61 + $795,537.90 + $795,537.90 + $100,108.80 + $101,850) × 0.25= $1,076,276.24

\*   \*   \*

Adding together the conservative amounts-in-controversy calculated above produces a total amount-in-controversy of **$5,381,381.20**. Because this amount is greater than CAFA's $5

---

[5] *Arias* does not suggest that district courts should not use a 25% attorneys' fees award in amount-in-controversy calculations. The court in *Arias* merely stated that, on remand with instructions to recalculate the amount-in-controversy, the panel would "leave the calculation of the amount of the attorneys' fees at stake to the district court." 936 F.3d at 928.

13

million jurisdictional minimum, this Court possesses subject matter jurisdiction over this case.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Ramirez's motion to remand is DENIED.

Dated:  April 25, 2022

_____
BETH LABSON FREEMAN
United States District Judge