Edwin Aiwazian (Cal. State Bar No. 232943)
*edwin@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
*joanna@calljustice.com*
Selena Matavosian (Cal. State Bar No. 348044)
*selena@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

NELSON RAMIREZ, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act;

                    Plaintiff,

        vs.

HV GLOBAL MANAGEMENT CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive,

                    Defendants.

Case No. 5:21-cv-09955-BLF

Honorable Beth Labson Freeman
Courtroom 3

**CLASS ACTION**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Declaration of Proposed Class Counsel (Selena Matavosian); Declaration of Proposed Class Representative (Nelson Ramirez); and [Proposed] Order filed concurrently herewith]

Date:            July 11, 2024
Time:            9:00 a.m.
Courtroom:        3

Complaint Filed:   November 3, 2021
FAC Filed:        February 22, 2022
SAC Filed:        August 4, 2022
TAC Filed:        February 2, 2023
FAC Filed:        February 17, 2024
Trial Date:       None Set

*Vertical left margin:* LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 11, 2024 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth Labson Freeman in Courtroom 3 of the United States District Court for the Northern District of California, located at the San Jose Courthouse, 280 South 1st Street, 5th Floor, San Jose, California 95113, Plaintiff Nelson Ramirez ("Plaintiff") will, and hereby does, move for an order:

- Granting preliminary approval of the proposed class action settlement described herein and as set forth in the parties' Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement"), attached as "**EXHIBIT 1**" to the Declaration of Selena Matavosian in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement, including the means of allocation and distribution of the Gross Settlement Amount, and the allocations for Attorneys' Fees and Costs, Enhancement Payment, PAGA Allocation, and Settlement Administration Costs;

- Certifying the proposed Class for settlement purposes only;

- Preliminarily appointing Plaintiff Nelson Ramirez as Class Representative;

- Preliminarily appointing Edwin Aiwazian, Joanna Ghosh, and Selena Matavosian of Lawyers *for* Justice, P.C. as Class Counsel;

- Approving the proposed Notice of Proposed Class and Representative PAGA Action Settlement ("Class Notice"), attached as "**EXHIBIT 1**" to the [Proposed] Order Granting Preliminary Approval of Class Action and PAGA Settlement;

- Appointing ILYM Group, Inc. as the Settlement Administrator to handle the notice and administration process for the Settlement and preliminarily approving the Settlement Administration Costs;

///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

- Directing the Settlement Administrator to mail the Class Notice to the proposed Class;
- Approving the proposed deadlines for the notice and administration process as reflected herein and in the Settlement; and
- Scheduling a hearing to consider final approval of the Settlement, at which time the Court will also consider whether to grant final approval of the requests for an award of the Attorneys' Fees and Costs, Enhancement Payment, Settlement Administration Costs, and PAGA Allocation.

This motion is based upon the following Memorandum of Points and Authorities; the Settlement; the Declarations of Proposed Class Counsel (Selena Matavosian) and Proposed Class Representative (Nelson Ramirez) in support thereof; as well as the pleadings and other records on file with the Court in this matter, and such evidence and oral argument as may be presented at the hearing on this motion.

Dated: May 9, 2024            **LAWYERS *for* JUSTICE, PC**

By:  _____

Selena Matavosian
*Attorneys for* Plaintiff

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale. California 91203

1

# **TABLE OF CONTENTS**

2   I.    SUMMARY OF MOTION ................................................................. 1

3   II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND ..... 3

4   III.  SUMMARY OF THE SETTLEMENT TERMS ................................ 4

5         A.    The Class for Settlement Purposes .................................................. 4

6         B.    Essential Terms of the Settlement .................................................. 4

7         C.    Calculation of Individual Settlement Shares ............................. 5

8         D.    Calculation of Individual PAGA Payments .............................. 6

9         E.    Request for Exclusion, Notice of Objection, and Dispute

10              Procedures ............................................................................................. 6

11        F.    Scope of the Release ............................................................................ 7

12  IV.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL

13        OF THE CLASS ACTION SETTLEMENT ................................. 9

14  V.    THE SETTLEMENT SHOULD BE PRELIMINARILY

15        APPROVED ............................................................................................. 10

16        A.    The Settlement Resulted from Arm's Length Negotiations and

17              Extensive Investigation and Discovery ..................................... 10

18        B.    The Settlement Is Fair, Reasonable, and Adequate ................ 12

19        C.    The Settlement Is of Significant Value and Within the Range

20              of Approval ........................................................................................... 13

21              1.    The allocation for the Enhancement Payment is

22                    reasonable. ................................................................................ 14

23              2.    The allocations for the Attorneys' Fees and Costs are

24                    reasonable. ................................................................................ 15

25  VI.   CERTIFICATION OF THE PROPOSED CLASS IS

26        APPROPRIATE UNDER RULE 23 ................................................. 17

27        A.    Numerosity ............................................................................................ 18

28        B.    Commonality ......................................................................................... 18

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

i

C.  Typicality ................................................................ 19

D.  Adequacy of Representation ..................................... 19

    1.  *Appointment of Class Representatives.* ............................ *19*

    2.  *Appointment of Class Counsel.* ........................................ *20*

E.  Predominance and Superiority ............................... 20

VII.  ADEQUACY OF THE METHOD OF NOTICE ............................... 21

VIII. APPOINTMENT OF ILYM GROUP, INC. AS THE

SETTLEMENT ADMINISTRATOR ............................................... 23

IX.  DEADLINES FOR NOTICE AND ADMINISTRATION ............... 24

X.  CONCLUSION ..................................................................... 25

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale. California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980).....................................................16

*Dukes v. Wal–Mart, Inc.*, 564 U.S. 338, 350 & 359 (2011) ....................................18

*Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974)..............................22

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).....................................................17

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ...........................23

*Johnson v. California*, 543 U.S. 499, 504–05 (2005)..............................................18

**Treatises**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ....................19, 21

*Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ....................................18, 19

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015)..................................................................................................................14

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ...........................................18

*Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014) ...............................14

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ....................21

*Clayton v. Knight Transp.*, 2013 WL 5877213, at *23 (E.D. Cal. Oct. 30, 2013) ..16

*Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ............................................................................................14

*Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1123, 1127 (C.D. Cal. 2008) ...16

*In re Agent Orange Prod. Liabiltiy Litig.*, 818 F.2d 226, 232 (2d Cir. 1987) .........16

*In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992)..................................................................................................................18

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).....15

*In re Hill*, 775 F.2d 1037 (9th Cir. 1985)................................................................16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) .............14, 19

*In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013).............17

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014)

iii

........................................................................................................ 14

*Laffitte v. Robert Half Int'l, Inc.* 1 Cal.5th 480, 486 & 506 (2016)..................... 15

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ..... 13

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ............... 18

*Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)........................... 21

*Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)........................................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)........ 17

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)........................................................................................................... 16

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996).......................................................................................................... 22

*Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010)........................................................................................................... 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)........................................................................................................... 16

*Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003).................................... 14, 16

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)................. 17

*Van Vranken*, 901 F.Supp. at 297 .................................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010).. 16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................... 15, 16, 17

*Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ...................................... 19

*Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997) ............... 16

**Rules**

Federal Rule of Civil Procedure  23(a) ........................................................ 17, 18

Federal Rule of Civil Procedure  23(a)(1)........................................................... 18

Federal Rule of Civil Procedure  23(a)(4)........................................................... 19

Federal Rule of Civil Procedure  23(b) ............................................................... 17

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

iv

Federal Rule of Civil Procedure 23(b)(3) ........................................... 20

Federal Rule of Civil Procedure 23(c)(2) ........................................... 22

Federal Rule of Civil Procedure 23(c)(2)(B) ................................ 21, 22

Federal Rule of Civil Procedure 23(h) ............................................... 15

**Other Authorities**

*Manual for Complex Litig., Fourth* § 21.132 ....................................... 19

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF**

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF MOTION

Plaintiff Nelson Ramirez ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement") entered into by and between Plaintiff, individually and on behalf of all others similarly situated and other aggrieved employees, on the one hand, and Defendant HV Global Management Corporation ("Defendant"), on the other hand. Subject to Court approval, Plaintiff and Defendant (together, the "Parties") have agreed to settle the above-captioned action (the "Action") for a Gross Settlement Amount of Nine Hundred Thousand Dollars ($900,000) on a non-reversionary basis. The fully-executed Settlement is attached as "**EXHIBIT 1**" to the Declaration of Selena Matavosian ("Matavosian Decl."), filed concurrently herewith.

The Gross Settlement Amount includes the following: (1) Individual Settlement Payments to Settlement Class Members to be distributed from the Net Settlement Amount; (2) Enhancement Payment in an amount not to exceed Fifteen Thousand Dollars ($15,000); (3) Attorneys' Fees and Costs to Class Counsel in an amount not to exceed thirty-five percent (35%) of the Gross Settlement Amount (i.e., $315,000 if the Gross Settlement Amount is $900,000) and reimbursement of litigation costs and expenses not to exceed One Hundred Ten Thousand Dollars ($110,000); (4) Settlement Administration Costs to the Settlement Administrator not to exceed Ten Thousand Dollars ($10,000); and (5) the PAGA Allocation of Seventy-Five Thousand Dollars ($75,000) for penalties under the Private Attorneys General Act ("PAGA"), of which seventy-five percent (75%) (i.e. $56,250) will be distributed to the Labor and Workforce Development Agency ("LWDA") and twenty-five percent (25%) (i.e. $18,750) will be distributed to all current and former non-exempt employees employed by Defendant in California at any time during the PAGA Period ("PAGA Group Members") ("PAGA Group Civil Penalties Fund"). Settlement, ¶¶ 12.x, 12.ii-kk, & 17.c-f. The period February 17, 2023 through the Effective Date is

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

the "PAGA Period." *Id.*, ¶ 12.ll. The Effective Date is February 15, 2024, and thus the PAGA Period is February 17, 2023 through February 15, 2024. *Id.*, ¶ 12.p.

Plaintiff also seeks to provisionally certify the following Class for settlement purposes only, which Defendant does not oppose:

> All current and former non-exempt employees employed by Defendant in California at any time during the Class Period ("Class" or "Class Members"). *Id.*, ¶ 12.h.

The period November 3, 2018 through the Effective Date is the "Class Period." *Id.*, ¶ 12.j. The Effective Date is February 15, 2024, and thus the Class Period is November 3, 2018 through February 15, 2024. *Id.*, ¶ 12.p.

The Class consists of approximately three hundred forty (340) individuals, and the PAGA Group Members consists of approximately two hundred (200) individuals. Matavosian Decl., ¶ 9.

The Parties reached the Settlement after engaging in significant formal and informal discovery, investigations, and arm's-length negotiations. The Settlement resulted from a formal mediation conducted by Deborah Crandall-Saxe, Esq. (the "Mediator"), a respected mediator experienced in wage-and-hour class actions. The Settlement satisfies the criteria for approval and falls within the range of possible approval under federal and California law. Additionally, the proposed Class Notice provides the best notice practicable under the circumstances and will allow each Class Member a full and fair opportunity to evaluate and response to the Settlement and decide whether to participate in it. The Notice of Proposed Class and Representative PAGA Action Settlement (i.e., Class Notice) is attached as "**EXHIBIT 1**" to the Proposed Order, filed concurrently herewith. Accordingly, Plaintiff moves the Court to grant preliminary approval of the Settlement and the allocations for Attorneys' Fees and Costs, Enhancement Payment, and Settlement Administration Costs; conditionally certify the proposed Class for settlement purposes; direct distribution of the Class Notice; and set a Final Approval Hearing.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

## II.   **PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Defendant is a subsidiary of Marriott Vacation Ownership and is the "employment entity" for Hyatt Carmel Highlands and Highlands Inn ("Highlands Inn"). Defendant employs the individuals who work at the Highlands Inn property. Highlands Inn is a hotel and timeshare resort located in Carmel, California. Plaintiff Nelson Ramirez was employed by Defendant as an hourly-paid, non-exempt employee from approximately September 2009 to approximately September 2019. Declaration of Nelson Ramirez ("Ramirez Decl."), filed concurrently herewith, ¶ 2.

On February 17, 2024, Plaintiff filed the Fourth Amended Class Action Complaint for Damages and Enforcement Under the Private Attorneys General Act, Cal. Labor Code § 2698, Et Seq. ("Fourth Amended Complaint"). *See* Matavosian Decl., ¶ 15.a-rr. for the full procedural and litigation history of the Action.

Plaintiff's core allegations are that Defendant violated the California Labor Code and California Business and Professions Code by failing to properly pay minimum, regular, and overtime wages, provide compliant meal and rest periods, timely pay wages upon termination, timely pay wages during employment, provide complaint wage statements, keep requisite payroll records, pay reporting time, and reimburse necessary business-related expenses. Plaintiff contends that Defendant's conduct constitutes unfair business practices and gives rise to PAGA penalties. Plaintiff further alleges that Defendant's failure to properly pay all compensation due, arises from, *inter alia*, Defendant's practices and policies requiring Class Members to work before clocking in and after clocking out of their shifts and due to alleged rounding and improper regular rate calculations. As a result, Plaintiff contends that he and the Class Members are entitled to, *inter alia*, unpaid wages, penalties, and attorneys' fees and costs. Defendant denies any liability, denies that Plaintiff or the Class Members are entitled to any relief, denies that this case is appropriate for class or representative treatment for any purpose other than the Settlement, and maintains they have complied with the law in all respects.

On October 12, 2023, the parties participated in a private mediation before Deborah Crandall-Saxe, Esq. (the "Mediator"), a well-respected mediator experienced in handling complex wage-and-hour matters. With the aid of the Mediator's evaluations, the Parties reached the Settlement to resolve the Action.

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Class for Settlement Purposes

For settlement purposes only, the Parties agree to class certification as follows:

All current and former non-exempt employees employed by Defendant in California at any time during the Class Period. Settlement, ¶ 12.h.

As discussed in Section VII, *infra*, conditional class certification is appropriate with respect to the Settlement.

### B.    Essential Terms of the Settlement

Defendant will pay a Gross Settlement Amount of Nine Hundred Thousand Dollars ($900,000) on a non-reversionary basis. Settlement, ¶ 12.w. As discussed in Section I, *infra*, the Net Settlement Amount means the amount remaining after deducting the following from the Gross Settlement Amount: (1) Attorneys' Fees and Costs; (2) Enhancement Payment; (3) PAGA Allocation; and (4) Settlement Administration Costs. *Id.*, ¶¶ 17.c-f. Assuming the allocations towards these payments are awarded in full, the Net Settlement Amount that will be available to be allocated to Class Members who do not submit a valid and timely Request for Exclusion ("Settlement Class Members") is currently estimated to be at least Three Hundred Seventy-Five Thousand Dollars ($375,000). *Id.*, ¶¶ 12.ee & 12.yy. The entire Net Settlement Amount will be distributed to Settlement Class Members based upon their Qualifying Workweeks, and the entire PAGA Allocation will be distributed to the State of California and PAGA Group Members based on their Qualified PAGA Pay Periods, and no portion of the Gross Settlement Amount shall revert to Defendants. *Id.*, ¶¶ 12.ee & 12.ii.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

## C.  Calculation of Individual Settlement Shares

The Settlement Administrator shall calculate each Settlement Class Member's estimated pro rata share of the Net Settlement Amount ("Individual Settlement Share"), as follows:

> After Preliminary Approval, the Settlement Administrator will divide the Net Settlement Amount by the Qualifying Workweeks of all Class Members to yield the "Estimated Workweek Value," and multiply each Class Member's individual Qualifying Workweeks by the Estimated Workweek Value to yield his or her estimated Individual Settlement Share that he or she may be eligible to receive under the Settlement. Settlement, ¶ 18.a.

> After Final Approval of the Settlement, the Settlement Administrator will divide the final Net Settlement Amount by the Qualifying Workweeks of all Settlement Class Member to yield the "Final Workweek Value," and multiply each Settlement Class Member's individual Qualifying Workweeks by the Final Workweek Value to yield his or her Individual Settlement Share. Settlement, ¶ 18.b.

All Individual Settlement Shares will be allocated as: thirty percent (30%) wages and seventy percent (70%) penalties, interest and non-wage damages. Settlement, ¶ 35. The wages portion will be reported on an IRS Form W-2 and the portion allocated to interest and penalties will be reported on an IRS Form-1099 by the Settlement Administrator. Ibid. The Settlement Administrator will withhold the employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Shares, and issue checks to Settlement Class Members for their Individual Settlement Payment (i.e., payment of their Individual Settlement Share net of these taxes and withholdings). Ibid. Separately and in addition to the Gross Settlement Amount, Defendant shall be solely responsible for the timely payment of the employer's portion of payroll taxes and contributions with respect to the wages portion of Individual Settlement Shares ("Employer Taxes"). *Id.*, ¶ 33.

///

**D.    Calculation of Individual PAGA Payments**

The Settlement Administrator shall calculate each PAGA Group Member's estimated pro rata share of the PAGA Group Civil Penalties Fund ("Individual PAGA Payment") (if he or she is eligible to receive payment thereof), as follows:

> After Preliminary Approval, the Settlement Administrator will divide the PAGA Group Civil Penalties Fund ($18,750) by the total number of Qualifying PAGA Pay Periods worked by PAGA Group Members to yield the "Estimated PAGA Pay Periods Value," and multiply each PAGA Group Member's individual Qualifying PAGA Pay Periods by the Estimated PAGA Pay Periods Value to yield his or her estimated individual PAGA Allocation share and payment that he or she may be eligible to receive under the Settlement, ¶ 19.a.

> After Final Approval of the Settlement, the Settlement Administrator will divide the final PAGA Group Civil Penalties Fund ($18,750) by the total number of Qualifying PAGA Pay Periods worked by PAGA Group Members to yield the "Final PAGA Pay Period Value," and multiply each PAGA Group Member's individual Qualifying PAGA Pay Periods by the Final PAGA Pay Periods Value to yield his or her Individual PAGA Payment. Settlement, ¶ 19.b.

Each Individual PAGA Payment will be allocated entirely as penalties, interest, and non-wage damages, and will thus be reported on an IRS Form-1099 by the Settlement Administrator. Settlement, ¶ 36.

**E.    Request for Exclusion, Notice of Objection, and Dispute Procedures**

Any Class Member wishing to be excluded from the Class Settlement must submit a written request ("Request for Exclusion") to the Settlement Administrator, by mail or fax, on or before the date that is forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator ("Response Deadline"). Settlement, ¶¶ 12.uu, 12.vv & 27.a. The Request for Exclusion must contain all information required by the Settlement to be valid. *Id.*, ¶ 12.uu. Any Class Member who timely and validly submits a Request for Exclusion: (1) is prohibited from objecting to the Settlement, (2) will not receive the portion of

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

the Individual Settlement Payment which would have been paid to him or her, and (3) will not be bound by the terms and conditions of this Settlement. *Id.*, ¶ 27.a.  No Class Member may submit a Request for Exclusion from the PAGA Group. Ibid.

Settlement Class Members may object to the Class Settlement in person at the Final Approval Hearing and/or by submitting a written objection ("Notice of Objection") to the Settlement Administrator, by mail or fax, on or before the Response Deadline. Settlement, ¶¶ 12.ff & 30.a. The Notice of Objection must contain all information required by the Settlement to be valid. *Id.*, ¶ 12.ff.

The Class Notice will include the procedure by which a Class Member and/or PAGA Group Member may dispute the number of Qualifying Workweeks and/or Qualifying PAGA Pay Periods allocated to him or her by submitting a written dispute to the Settlement Administrator. Settlement, ¶ 25.  The dispute must contain all information required by the Settlement to be valid. Ibid.

F.     **Scope of the Release**

The Settlement Class Members' Released Claims that are the subject of the Settlement are:

> Any and all claims that are alleged in the Fourth Amended Complaint, or that could have been alleged in the Fourth Amended Complaint, based upon or arising out of, or which are derivative to the facts and/or claims alleged in the Fourth Amended Complaint during the Class Period.  This includes claims for violations of the California Labor Code or any applicable California Wage Order for: the purported payment or nonpayment of compensation (including, but not limited to, wages, minimum wage, straight time, overtime, and/or premium pay); failure to pay compensation at the regular rate of pay; failure to pay for all hours worked, including any and all work performed off-the-clock or under the control of Defendant; failure to pay overtime in violation of California Labor Code §§ 510, 551, 552 and 1198; failure to provide meal periods and meal period premiums in violation of California Labor Code §§ 226.7 and 512(a); failure to provide rest period and rest period premiums in violation of California Labor Code § 226.7; failure to pay minimum wage in violation of California Labor Code §§ 1194, 1197, and 1197.1; failure to pay timely wages during employment pursuant to Labor Code § 204; failure to pay final wages in violation of California

7

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Labor Code §§ 201, 202, and 203; failure to reimburse business expenses in violation of California Labor Code §§ 2800 and 2802; failure to provide complete and compliant wage statements in violation of California Labor Code § 226; failure to keep complete and accurate records in violation of California Labor Code § 1174(d); improper recordkeeping; unfair business practices; including related premiums; statutory penalties; waiting time penalties; liquidated damages; interest; punitive damages; costs; attorneys' fees; injunctive relief; declaratory relief; or accounting, whether such causes of action are in tort, contract, or pursuant to a statutory remedy. Settlement, ¶ 40.a.

The PAGA Group Members' Released Claims that are the subject of the Settlement are:

Any Labor Code or Wage Order violation that are alleged in the Fourth Amended Complaint, or that could have been alleged in the Fourth Amended Complaint, based upon or arising out of or which are derivative to the facts and/or claims alleged in the Fourth Amended Complaint and/or the LWDA Notice, during the PAGA Period. This includes, but is not limited to PAGA claims for violations of the California Labor Code and the California Wage Orders for: the purported payment or nonpayment of compensation (including, but not limited to, wages, minimum wage, straight time, overtime, and/or premium pay); failure to pay compensation at the regular rate of pay; failure to pay all hours worked, including any and all work performed off-the-clock or under the control of Defendant; failure to pay overtime in violation of California Labor Code §§ 510, 551, 552 and 1198; failure to provide meal periods and meal period premiums in violation of California Labor Code §§ 226.7 and 512(a); failure to provide rest period and rest period premiums in violation of California Labor Code § 226.7; failure to pay minimum wage in violation of California Labor Code §§ 1194, 1197, and 1197.1; failure to pay final wages in violation of California Labor Code §§ 201, 202, and 203; failure to timely pay wages during employment in violation of California Labor Code § 204; failure to reimburse business expenses in violation of California Labor Code §§ 2800 and 2802; failure to provide complete and compliant wage statements in violation of California Labor Code § 226; and failure to keep complete and accurate records in violation of California Labor Code § 1174(d). Settlement, ¶ 40.b.

Released Parties means Defendant and any of its past and present parents, owners, subsidiaries, affiliates, divisions, joint employers, Marriott Vacations Worldwide Corporation, and/or related entities, and their shareholders, officers,

1    directors, employees, partners, shareholders, agents, attorneys, insurers and

2    reinsurers, predecessors, successors, assigns, heirs, accountants, auditors,

3    consultants, and/or legal representatives, and any individual or entity that could be

4    jointly or severally liable for any of the Released Claims. *Id*., ¶ 12.tt.

5         Upon Final Approval of the Settlement and payment of amounts set forth

6    herein, and except as to such rights or claims as may be created by the Settlement,

7    Plaintiff (including on behalf of the LWDA and the Aggrieved Employees), Class

8    Members, and PAGA Group Members shall release and discharge all Released

9    Parties, finally, forever and with prejudice, from any and all claims. *Id*., ¶ 40.

10   ## IV.  THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF

11   ## THE CLASS ACTION SETTLEMENT

12        Class action settlements require court approval. Fed. R. Civ. Proc. 23(e).

13   Although judicial policy favors settlement of class actions, *Class Plaintiffs v. City of*

14   *Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), the decision to approve or reject a

15   settlement is within the trial court's discretion, and that decision may be reversed only

16   upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150

17   F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs*, 955 F.2d at 1276.

18        A settlement should be approved if it is "fundamentally fair, adequate, and

19   reasonable." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e). In approving a class

20   action settlement, Courts engage in a two-step process: (1) preliminary approval of

21   the settlement; and (2) a later detailed review after notice is given to class members,

22   to determine whether final approval is appropriate. *Nat'l Rural Telecomms. Coop. v.*

23   *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval

24   stage, courts must approve a class action settlement "if it appears to be the product of

25   serious, informed, non-collusive negotiations, has no obvious deficiencies, and does

26   not improperly grant preferential treatment to class representatives or segments of the

27   class, and falls within the range of possible approval." *In re Tableware Antitrust*

28   *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

9

In evaluating the fairness of the class action settlement, courts should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. Courts need only ensure that the settlement is not a product of "fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Id*.

## V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Preliminary approval is appropriate if the settlement is "potentially fair," *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), and has no "glaring deficiencies" such that final approval hearing is not warranted. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 478 (E.D. Cal. Mar. 4, 2010). As discussed below, the Settlement should be preliminarily approved because it is fair and reasonable and resulted from hard-fought litigation and extensive negotiations.

### A.    The Settlement Resulted from Arm's Length Negotiations and Extensive Investigation and Discovery

An initial presumption of fairness exists "if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). Courts give great weight to such recommendation as class counsel is most familiar with the issues underlying the case. *Nat'l Rural*, 221 F.R.D. at 528.

Here, the Parties actively litigated this case since it was commenced on November 3, 2021. Class Counsel conducted a thorough investigation into the facts and circumstances of the case and diligently investigated the allegations in this lawsuit. Matavosian Decl., ¶¶ 12-14. Class Counsel reviewed a volume of documents and data obtained from Defendant, Plaintiff, and other sources. *Id.*, ¶ 14. The Parties exchanged information and documents formally and informally. *Id.*, ¶ 12-14. Counsel for the Parties also met and conferred on numerous occasions, e.g., to discuss issues relating to the pleadings, discovery, case management, motion practice, the production of information, documents, and data in the course of

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

10

litigation and the mediation, and mediation and settlement negotiations. *Id.*, ¶ 14.

The Parties reached the Settlement after reviewing all available evidence, engaging in arm's-length bargaining, and participating in mediation conducted by Deborah Crandall-Saxe, Esq., a respected mediator experienced in handling complex wage-and-hour matters. *Id.*, ¶ 12. Prior to and during the mediation and settlement discussions, the Parties exchanged extensive information and engaged in discussions regarding their evaluations of the case and various aspects of the case. Ibid.

During all settlement discussions, the Parties conducted negotiations at arm's length from an adversarial position. *Id.*, ¶ 12. Arriving at a settlement acceptable to all Parties was not easy. Defendant felt strongly about its ability to prevail on the merits and at certification, and Plaintiff and Class Counsel believed they would be able to obtain class certification and prevail at trial. Ibid. With the aid of the Mediator, the Parties agreed that this case was well-suited for settlement given the legal issues relating to the claims, as well as the costs and risks to both sides that would attend further litigation. *Id.*, ¶¶ 12 & 24. The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. *Id.,* ¶¶ 12, 14, 19, & 20.

The Settlement is based on this large volume of facts, evidence, and investigation, and the parties' negotiations during the mediation. *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"). While the Parties disagree over the merits and certifiability of Plaintiff's claims, Plaintiff and Class Counsel agree that the Settlement is fair, reasonable, adequate, and in the best interest of the Class, State of California, and PAGA Group Members, in light of all known facts and circumstances. *Id.*, ¶¶ 12, 16, & 24.

///

///

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

---

11

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

### B.    The Settlement Is Fair, Reasonable, and Adequate

The Gross Settlement Amount of Nine Hundred Thousand Dollars ($900,000) represents a fair, reasonable, and adequate resolution of this lawsuit. Under the Settlement, the entire Net Settlement Amount will be distributed to Settlement Class Members and is currently estimated to be at least Three Hundred Seventy-Five Thousand Dollars ($375,000). The amount of Seventy-Five Thousand Dollars ($75,000) will be allocated to resolution of the PAGA Group Members' Released Claims, of which $56,250 will be distributed to the LWDA (i.e., the LWDA Payment) and $18,750 will be distributed to PAGA Group Members (i.e., the PAGA Group Civil Penalties Fund). The amount of the Settlement is reasonable considering the risks relating to certification, liability, and the ability to recover monetary relief on a class-wide or representative basis. Matavosian Decl., ¶¶ 12, 16 & 22. Additionally, the Settlement guarantees a certain monetary recovery to Settlement Class Members, PAGA Group Members, and the State of California in a reasonably short period of time, as opposed to waiting additional years for the same, or possibly, no recovery.

The Settlement was calculated using data and information obtained through investigation, pleadings, and formal and informal exchange of information in advance of or in the context of mediation and settlement negotiations. *Id.*, ¶¶ 12 & 13. Prior to mediation, Class Counsel conducted extensive investigation into the claims. *Id.*, ¶¶ 12-14, & 19. The data and information enabled Class Counsel to calculate the value of the claims and the monetary recovery that could potentially be obtained, and permitted a complete understanding of Defendant's relevant employment policies, practices, and procedures. *Id.*, ¶¶ 13, 19, & 20. This information proved invaluable in negotiating a settlement amount that provides fair, adequate, and reasonable payment for the resolution of the class and PAGA claims. *Id.,* ¶¶ 12, 16, & 24.

The Parties have also considered the potential risks and rewards inherent in any case and, in particular, with this case. *Id.*, ¶¶ 12, 19-21, & 24. Prior to the mediation, Class Counsel performed extensive damages and valuation analysis based

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

on class data and a sampling of data provided by Defendant. *Id.*, ¶¶ 13 & 21. During the mediation, Defendant contended, among other things, that their policies and practices fully complied with California law. *Id.*, ¶¶ 12 & 21.

Plaintiff faces numerous risks in continued litigation, including and not limited to, the risk of receiving no recovery if a class is not certified or no liability is found, or the Court determining that adjudication on a representative or class basis is unmanageable and not appropriate. *Id.*, ¶¶ 14, 19, 20, & 22. Plaintiff also faces the possibility that the amount recovered against Defendant after years of litigation and a lengthy and costly trial is less than the amount negotiated in this Settlement. Ibid.

Additionally, the Settlement is fair because it poses no risk of unequal treatment of any Class Member. Individual Settlement Payments will be calculated based upon the Settlement Class Member's Qualified Workweeks and Individual PAGA Payments will be calculated based upon the PAGA Group Member's Qualifying PAGA Pay Periods. Settlement, ¶ 19 & 20.

There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds for purposes of preliminary approval. Even at the final approval stage: "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Considering the facts in this case, the amount of the Settlement represents a fair, reasonable, and adequate recovery for the Class, State of California, and PAGA Group Members. Matavosian Decl., ¶¶ 12, 16, 21 & 24.

## C. The Settlement Is of Significant Value and Within the Range of Approval

The Gross Settlement Amount of Nine Hundred Thousand Dollars ($900,000) provides substantial monetary recovery to the Class Members, State of California, and PAGA Group Members, and is fair, reasonable, and adequate in light of the value

13

of the claims and the significant risks of continued litigation. Similarly, all of the other Settlement terms for which Plaintiff requests approval and/or preliminary approval fall within the range of reasonableness, as discussed below.

1.    *The allocation for the Enhancement Payment is reasonable.*

Subject to Court approval, Plaintiff will receive an Enhancement Payment of Fifteen Thousand Dollars ($15,000). Settlement, ¶ 17.d. The Enhancement Payment will be paid in addition to Plaintiff's Individual Settlement Payment and/or Individual PAGA Payment. *Ibid.*

The trial court has discretion to award incentives to the class representative. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have considered the factors set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995): (1) the risk to the class representative in commencing a class action; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g., In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014). Courts routinely approve incentive awards to class representatives for their time and effort and the risks undertaken on behalf of the class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in the range of $2,000 to $25,000). "Incentive awards are particularly appropriate in wage-and-hour actions" because named plaintiffs bear "a significant reputational risk for bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015) (quotation marks omitted).

Here, the contemplated Enhancement Payment is fair and appropriate and is well within the range of incentive payments awarded by district courts. *See id.*; *Angell*

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

*v. City of Oakland*, 13 cv-00190 NC, 2015 WL 65501, at *8 (N.D. Cal. Jan. 5, 2015) ($9,000 approved); *Covillo*, 2014 WL 954516, at *8 ($8,000 approved).

Plaintiff spent considerable time and effort to produce relevant documents and past employment records and provide the facts and evidence necessary to support the allegations. Matavosian Decl., ¶ 23; Ramirez Decl., ¶¶ 3-6. Plaintiff was available whenever their counsel needed them and tried to obtain and provide documents and information that would facilitate the pursuit of the class and PAGA claims. Ibid. Plaintiff expended effort to review and provide responses and supplemental responses to multiple sets of discovery requests that were served by Defendant and to prepare for and attend a deposition. Ibid. Accordingly, it is appropriate and just for Plaintiff to receive a reasonable Enhancement Payment for his services on behalf of the Class, State of California, and PAGA Group Members.

   2. *The allocations for the Attorneys' Fees and Costs are reasonable.*

The Settlement establishes a Gross Settlement Amount of Nine Hundred Thousand Dollars ($900,000) and provides for Class Counsel to apply for attorneys' fees in an amount of up to thirty-five percent (35%) of the Gross Settlement Amount. Settlement, ¶ 17.e. Class Counsel will bring an appropriate motion in advance of the Final Approval Hearing pursuant to Rule 23(h), and submit supporting evidence and documents.

Under California and Ninth Circuit precedent, a court has discretion to determine attorneys' fees using either the lodestar method or the percentage-of-the-fund method. It is appropriate to calculate and award attorneys' fees as a percentage of a monetary funds that has, by litigation, been preserved or recovered for the benefit of others. *Laffitte v. Robert Half Int'l, Inc.* 1 Cal.5th 480, 486 & 506 (2016); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 253 (2001); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The percentage method is based on the amount of total recovery, as opposed to the total amount of claims made, and is

15

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

well established in federal courts and the Ninth Circuit. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Hill*, 775 F.2d 1037 (9th Cir. 1985); *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997); *In re Agent Orange Prod. Liabiltiy Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).District courts may adjust the twenty-five percent (25%) benchmark (observed by the Ninth Circuit) upward or downward if "the percentage recovery would be either too small or large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Staton*, 327 F.3d at 968; *Vizcaino*, 290 F.3d at 1048. If a proposed class action settlement includes an award of attorneys' fees, courts must evaluate that fee award on a case-by-case basis in the overall context of the settlement, and an award above the twenty-five percent (25%) benchmark may be warranted. In California, attorneys' fees tend to be awarded above the twenty-five percent (25%) federal benchmark. *See Van Vranken*, 901 F.Supp. at 297 (holding that fee awards of 30-50% are more typical where the fund is less than $10 million); *Craft v. City. of San Bernardino*, 624 F.Supp.2d 1123, 1127 (C.D. Cal. 2008) (holding that attorneys' fees in cases where the fund is below $10 million are often more than 25%). Moreover, "awards in the Central District are in the 20% to 50% range." *Clayton v. Knight Transp.*, 2013 WL 5877213, at *23 (E.D. Cal. Oct. 30, 2013). Other districts usually award attorneys' fees in the 30-40% range in wage-and-hour class actions that result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing recent wage-and-hour class actions where district courts approved attorneys' fee awards ranging from 30-33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (approving attorneys' fees of one-third of the common fund and holding that the award was similar to awards in other wage-and-hour class actions where fees ranged from 30.3-40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) (recognizing that "fee awards in class actions average around one-third" of the settlement).

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

The goal is to award "reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In reviewing a fee award request, courts consider the following factors: (1) the results achieved; (2) whether there are benefits to the class beyond the immediate generation of a cash fund; (3) the risks of litigation; (4) the skill required of counsel and quality of the work performed; (5) the contingent nature of the fee and the foregoing by counsel of other work; and (6) the reactions of the class. *Vizcaino*, 290 F.3d at 1048-50; *In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013). Of these factors, the most significant factor is the "degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Here, the attorneys' fee award provided for by the Settlement is reasonable, particularly in light of the time and effort expended by Class Counsel. Class Counsel extensively litigated this case for over two (2) years, with the possibility of an unsuccessful outcome and no fee recovery of any kind. Matavosian Decl., ¶ 12. The ongoing work has been demanding and ultimately successful in achieving a substantial settlement. Given the strengths and weaknesses of the claims and the risk and expense of further litigation, Class Counsel has achieved an excellent result in this lawsuit. Considering the amount of the fees to be requested, the work performed, and the risks incurred, the allocations for Attorneys' Fees and Costs provided for by the Settlement are reasonable and should be awarded. *See Vizcaino*, 290 F.3d at 1051.

## VI.    CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23

Class certification under Rule 23(a) is appropriate where the plaintiff demonstrates the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), and one of the three requirements of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The proposed Class meets all of these requirements.

///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

### A.    Numerosity

A class is sufficiently numerous if it is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement." *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

The proposed Class consists of approximately three hundred forty (340) Class Members and two hundred (200) PAGA Group Members. Matavosian Decl., ¶ 9. The proposed Class is sufficiently numerous, and joinder of all Class Members would be impractical. *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *rev'd on other grounds*, 666 F.581, 593 (9th Cir. 2012) ("As a general rule, classes of forty or more are considered sufficiently numerous.").

### B.    Commonality

A settlement class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). An affirmative showing of at least one common question of law or fact satisfies this requirement. *Dukes v. Wal–Mart, Inc*., 564 U.S. 338, 350 & 359 (2011); *see also Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule."). Commonality has been found to exist when there is a common legal issue stemming from divergent factual predicates or a common nucleus of facts leading to different legal remedies. *Hanlon*, 150 F.3d at 1019.

Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members[]" and divergent ways in which these practices affect individual Class Members, if any, do not undermine the finding of commonality. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976). Here, the Class Members seek remedies under California's wage-and-hour laws for violations arising from common, uniform, and systematic practices

18

which applied to all Class Members during the Settlement Class Period. *See* e.g., Matavosian Decl., ¶¶ 19 & 21. Accordingly, the commonality requirement is satisfied for settlement purposes.

### C. **Typicality**

The typicality requirement is satisfied where "the cause of the injury is the same," as here, and the injury claimed by the named plaintiffs are "similar" to that of unnamed class members. *Armstrong*, 275 F.3d at 868-69. They need not be "identical." *Id.* at 869. Here, Plaintiff's claims are typical of those of the Class Members, though some factual differences may exist among them, as the claims arise from the same events or course of conduct and are based upon the same legal theories. Given the structure of the Settlement, the proposed Class satisfies the typicality requirement for settlement purposes as Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to all other Class Members. *Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### D. **Adequacy of Representation**

Rule 23(a)(4) requires that: (1) Class Representatives fairly and adequately protect the interests of the class, and (2) Class Counsel be qualified and competent to conduct the litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000). The requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also Manual for Complex Litig., Fourth Ed.* § 21.132 ("a settlement class must be cohesive"). The inquiry turns on whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "whether the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

#### 1. *Appointment of Class Representatives.*

Plaintiff meets the requirements under Federal Rule of Civil Procedure 23(a)(4), for appointment to represent the Class. Plaintiff's claims are typical of and

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

align with those of Class Members, which are confined to a limited group of similarly-situated employees who were employed by Defendant within the State of California during the Class Period. Also, Plaintiff spent considerable time and effort to produce relevant documents and past employment records and provide the facts and evidence necessary to support the allegations. Matavosian Decl., ¶ 23; Ramirez Decl., ¶¶ 3-6. Plaintiff was available whenever counsel needed him and tried to obtain and provide documents and information that would facilitate the pursuit of the class and PAGA claims. Ramirez Decl., ¶¶ 3-6. As such, Plaintiff has demonstrated that he has and will continue to fairly and adequately represent the Class, and appointment of Plaintiff as Class Representatives is appropriate.

### 2. *Appointment of Class Counsel.*

Class Counsel meets the requirements under Federal Rule of Civil Procedure 23(g), for appointment to represent the Class. Class Counsel are highly experienced in employment class action and complex wage-and-hour litigation, having handled many cases before and having been appointed class counsel in many other cases. Matavosian Decl., ¶¶ 2-7. Class Counsel's experience in litigating similar matters was integral to obtaining the Settlement. Class Counsel conducted extensive research, investigation, and analysis of the potential value of the claims. Matavosian Decl., ¶¶ 12, 13 & 21. Class Counsel have committed and continue to commit significant financial and staffing resources to the pursuit of the Action. As such, appointment of Edwin Aiwazian, Joanna Ghosh, and Selena Matavosian of Lawyers *for* Justice, PC as Class Counsel is appropriate.

### E. **Predominance and Superiority**

The proposed Class meets the requirements of Rule 23(b)(3) for settlement purposes because: (1) common questions predominate over questions that affect individual members and (2) class resolution is superior to other available means of adjudication. When assessing predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. *See Amchem*

20

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

*Prods.,* 521 U.S. at 618-20. Where the matter is being settled, a showing of manageability at trial is unnecessary. *Id.* at 620. At this stage, the relevant inquiry is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

Here, the proposed Class is sufficiently cohesive to warrant certification. For settlement purposes, common questions of fact and law affecting Class Members predominate over any questions that may affect only individual members. For example, Defendant's alleged failure to properly pay their employees for all hours worked and provide compliant meal and rest periods are alleged to arise from Defendant's uniform policies, practices, and procedures. As such, the questions of fact and law relating to these issues predominate.

Moreover, a class resolution is superior to other available means for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanism of dispute resolution." *Id.* Here, the alternative method of resolution is individual claims, subject to proof, for relatively small amounts of damages, which would be uneconomical for potential plaintiffs. Therefore, a class resolution is superior to any other available methods.

## VII.   ADEQUACY OF THE METHOD OF NOTICE

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. A class notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). A class notice is adequate if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The notice must also be "neutral and objective in tone and should neither promote nor discourage the assertion of claims." *Schaefer v. Overland Express Family of Funds*,

**LAWYERS for JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

169 F.R.D. 124, 131 (S.D. Cal. 1996).

Here, the proposed Class Notice provides the best notice practicable and is adequate. It provides information on, *inter alia*, the nature of the Action, the definition of the Class, the terms of the Settlement, the scope of the Settlement Class Released Claims and PAGA Group Released Claims, the binding effect of the Settlement, and the allocations for the Attorneys' Fees and Costs, Enhancement Payment, PAGA Allocation, and Settlement Administration Costs. Each notice shall include, among other things: (a) for Class Members, an estimated Individual Settlement Share and number of Qualifying Workweeks worked during the Class Period, (b) for PAGA Group Members, estimated Individual PAGA Payment and number of Qualifying PAGA Pay Periods worked during the PAGA Period, (d) how to opt-out of the Class Settlement, (e) how to object to the Class Settlement, and (f) how to dispute the number of estimated Qualifying Workweeks (for Class Members) and Qualifying PAGA Pay Periods (for Aggrieved Employees). The Class Notice summarizes the proceedings and provides the date, time, and place of the Final Approval Hearing, and all of this information is "clearly and concisely state[d] in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

All Class Members can and will be identified by Defendant through a review of their records. Upon receipt of the Class Data and List, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct any known or identifiable address changes. Settlement, ¶ 22.a. *See Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974) (Individual notice by mail "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)" where "all class members [] can be identified with reasonable effort"). Accordingly, the proposed Class Notice is adequate and is the best notice practicable under Rule 23(c)(2)(B).

The Class Notice also fulfills the requirement of neutrality in class notices. The Class Notice provides a brief, neutral explanation of the case from the perspective of

22

both parties and recognizes that the Court has not yet granted final approval of the Settlement. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("[C]ourts must be scrupulous to respect judicial neutrality" in overseeing the class action notice process and "avoid even the appearance of judicial endorsement of the merits of the action[.]"). The Class Notice sets forth in an accurate and informative manner the procedures and deadlines governing the submission of Requests for Exclusion, Notices of Objections, and disputes to Qualifying Workweeks and/or Qualifying PAGA Pay Periods. The proposed Class Notice satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality. Accordingly, the Court should approve the proposed Class Notice.

## VIII. APPOINTMENT OF ILYM GROUP, INC. AS THE SETTLEMENT ADMINISTRATOR

The Parties selected ILYM Group, Inc., ("ILYM") as the Settlement Administrator to handle the notice and administration process. ILYM shall be responsible for: processing and mailing payments to Plaintiff, Class Counsel, Settlement Class Members, and PAGA Group Members; printing, and mailing Class Notices and tax forms to the Class Members and PAGA Group Members as directed by the Court; receiving and reporting the Requests for Exclusion, Notices of Objection, and disputes to Qualifying Workweeks and/or Qualifying PAGA Pay Periods; providing declaration(s) as necessary in support of preliminary and/or final approval of this Settlement; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. Settlement, ¶ 17.c. ILYM will also handle inquiries from Class Members regarding the Settlement and perform any other usual and customary duties for administering a class action settlement.

Settlement Administration Costs are estimated not to exceed Ten Thousand Dollars ($10,000) and will be paid out of the Gross Settlement Amount subject to court approval. Plaintiff respectfully requests that the Court appoint ILYM as the Settlement Administrator and direct distribution of the Class Notice in the manner

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

23

and in accordance with the proposed schedule, set forth in the Settlement and discussed in Section VIII, *infra*.

## IX.    <u>DEADLINES FOR NOTICE AND ADMINISTRATION</u>

The Court is respectfully requested to approve the proposed deadlines for the notice and administration process. Upon granting preliminary approval, Defendant shall provide the Settlement Administrator a list including each Class Members' and PAGA Group Members': (1) full name; (2) last known address; (3) last known telephone number (if available); (4) Social Security Number; (5) Qualifying Workweeks; and (6) Qualifying PAGA Pay Periods (if any) (collectively, "Class Data and List") no later than twenty-one (21) calendar days of preliminary approval. Settlement, ¶¶ 12.g. & 21. Within ten (10) business days after receiving the Class Data and List, the Settlement Administrator will perform a search based on the National Change of Address Database or any other similar services available for information to update and correct for any known or identifiable address changes, and will mail the Court-approved Class Notice in English and Spanish to all Class Members via First-Class U.S. Mail, using the most current, known mailing addresses. *Id.*, ¶ 22.a. With respect to Class Notices that are returned as undeliverable on or before the Response Deadline, the Settlement Administrator will search for an alternate address by way of skip-trace and re-mail the Class Notice within five (5) calendar days. *Id.*, ¶ 22.b. If a Class Member's Class Notice is re-mailed, the Class Member shall have fifteen (15) calendar days from the date of re-mailing, or forty-five (45) calendar days from the date of initial mailing, whichever is later, in which to postmark disputes, Notices of Objections, or Requests for Exclusion. Ibid. If the Class Notice is returned with a forwarding address, the Settlement Administrator shall re-mail the Class Notice to the forwarding address. *Id.*, ¶ 22.c. Requests for Exclusion, Notices of Objections, and disputes must be mailed to the Settlement Administrator, postmarked on or before the Response Deadline. *Id.*, ¶ 12.vv.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Within ten (10) calendar days of the funding of the Gross Settlement Amount by Defendant, the Settlement Administrator will issue payments due under the Settlement and approved by the Court, as follows: (a) Individual Settlement Payments to Settlement Class Members; (b) Individual PAGA Payments to PAGA Group Members; (c) LWDA Payment to the LWDA; (d) Enhancement Payment to Plaintiff; and (e) Attorneys' Fees and Costs to Class Counsel. Settlement, ¶ 17.b. Each Individual Settlement Payment and Individual PAGA Payment will be valid and negotiable for one hundred and eighty (180) calendar days from the date of issuance, and thereafter, shall be cancelled. *Id.*, ¶ 26. All funds associated with such cancelled checks will be transmitted to the California State Controller Unclaimed Property Fund in the name of the Settlement Class Member or PAGA Group Member for whom the funds are designated. Ibid.

## X. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement; certify the proposed Class for settlement purposes; appoint Edwin Aiwazian, Joanna Ghosh, and Selena Matavosian of Lawyers *for* Justice, PC as Class Counsel; preliminarily approve the allocations for the Attorneys' Fees and Costs, Enhancement Payment, PAGA Allocation, and Settlement Administration Costs; appoint Plaintiff as the Class Representative; appoint ILYM as the Settlement Administrator; approve and direct the mailing of the Class Notice to the Class; and schedule a Final Approval Hearing in approximately six (6) months.

Dated:  May 9, 2024

**LAWYERS *for* JUSTICE, PC**

By: _____

Selena Matavosian
*Attorneys for* Plaintiff

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

25