Edwin Aiwazian (Cal. State Bar No. 232943)
    *edwin@calljustice.com*
Joanna Ghosh (Cal. State Bar No. 272479)
    *joanna@calljustice.com*
Selena Matavosian (Cal. State Bar No. 348044)
    *selena@calljustice.com*
**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203
Tel: (818) 265-1020 / Fax: (818) 265-1021

*Attorneys for* Plaintiff and the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON RAMIREZ, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act; | Case No.: 5:21-cv-09955-BLF <br><br> Honorable Beth Labson Freeman <br> Courtroom 1 <br><br> **CLASS ACTION** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| HV GLOBAL MANAGEMENT CORPORATION, an unknown business entity; and DOES 1 through 100, inclusive, | [Notice of Motion and Motion for Attorneys' Fees and Costs and Enhancement Payment; Declaration of Class Counsel (Selena Matavosian); Declaration of Class Representative (Nelson Ramirez); Declaration of Settlement Administrator (Amanda Howard); [Proposed] Order Awarding Attorneys' Fees and Costs and Enhancement Payment; and [Proposed] Order Granting Final Approval of Class Action and PAGA Settlement and Judgment filed concurrently herewith] |
| Defendant. | Date:              April 17, 2025 <br> Time:              9:00 a.m. <br> Courtroom:    1 <br><br> Complaint Filed:    November 3, 2021 <br> FAC Filed:            February 22, 2022 |

| | |
|---|---|
| SAC Filed: | August 4, 2022 |
| TAC Filed: | February 2, 2023 |
| FAC Filed: | February 17, 2024 |
| Trial Date: | None Set |

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**PLEASE TAKE NOTICE** that on April 17, 2025, at 9:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Beth Labson Freeman, in Courtroom 1 of the United States District Court for the Northern District of California, located at San Jose Courthouse, 280 South First Street, 5th Floor, San Jose, California 95113, Plaintiff Nelson Ramirez ("Plaintiff" or "Class Representative") will and hereby does move for an order granting final approval of:

1.     The proposed class action settlement described herein and as set forth in the parties' Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement," "Agreement," or "Settlement Agreement") on the grounds that the Settlement is fair, adequate, and reasonable because:

- A Net Settlement Amount of approximately **$380,947.10** will be fully distributed to all Class Members who did not submit a valid and timely Request for Exclusion ("Settlement Class Member");

- **No Notices of Objection** were submitted to the settlement administrator, ILYM Group, Inc. ("Settlement Administrator" or "ILYM Group");

- **No Requests for Exclusion** were submitted to the Settlement Administrator;

2.     Payment in the amount of **$7,950.00** to the Settlement Administrator, ILYM Group, for Settlement Administration Costs; and

3.     Allocation for the penalties under the California Labor Code Private Attorneys General Act of 2004, Labor Code section 2698, et seq. ("PAGA"), in the amount of $75,000.00, of which seventy-five percent (75%), or **$56,250.00**, will be paid to the California Labor and Workforce Development Agency ("LWDA Payment"), and twenty-five percent (25%), or **$18,750.00**, will be distributed to PAGA Group Members on a *pro rata* basis ("PAGA Group Civil Penalties Fund").

This motion is based upon the following Memorandum of Points and Authorities and the Declaration of Settlement Administrator (Amanda Howard of ILYM) in support thereof; as well as the concurrently-filed Notice of Motion and

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1    Motion for Attorneys' Fees and Costs and Enhancement Payment, and the

2    Declarations of Class Counsel (Selena Matavosian) and Class Representative

3    (Nelson Ramirez) in support thereof; the pleadings and other records on file with the

4    Court in this matter; and such evidence and oral argument as may be presented at the

5    hearing on this Motion.

6    Dated: March 18, 2025                    **LAWYERS** *for* **JUSTICE, PC**

7

8                                    By:  _____

9                                         Selena Matavosian
                                          *Attorneys for* Plaintiff and the Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAWYERS** *for* **JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1

<u>**TABLE OF CONTENTS**</u>

I.      SUMMARY OF MOTION ................................................................................1

II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND.............2

III.    SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF
        DISTRIBUTION...............................................................................................3

IV.     THE SETTLEMENT ADMINISTRATION PROCESS..........................6

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS
        ACTION SETTLEMENT. ...............................................................................8

        A.      The Settlement Resulted from Arm's-Length Negotiations Based
                Upon Extensive Investigation and Discovery. ...................................9

        B.      The Risks Inherent in Continued Litigation Favor Final Approval
                of the Settlement..................................................................................13

        C.      The Settlement Is Fair, Reasonable, and Adequate.....................15

        D.      The Class Was Represented by Competent Counsel. ....................16

        E.      There Are No Notices of Objection to the Class Settlement. ........17

VI.     THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND
        REASONABLE AND SHOULD BE APPROVED. ..................................17

VII.    CONCLUSION ................................................................................................18

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Cases**

3
4
*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th
1135 ........................................................................................................... 9, 17

5
*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ................................................ 8, 9

6
*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 .................................... 8, 9, 17

7
*In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y.
8
2001) 127 F.Supp.2d 418 ...................................................................................... 16

9
*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ........................... 9, 17

**Other Authorities**

Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47 ................. 16

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     SUMMARY OF MOTION

Plaintiff Nelson Ramirez ("Plaintiff") seeks final approval of the Joint Stipulation of Class Action and PAGA Settlement and Release ("Settlement," "Agreement," or "Settlement Agreement"), entered into by and between Plaintiff and Defendant HV Global Management Corporation ("Defendant") (together with Plaintiff, the "Parties").[1]

The Settlement provides for a Gross Settlement Amount of $900,000.00 and seeks relief on behalf of the following Class:

> All current and former non-exempt employees employed by Defendant in California at any time during the Class Period ("Class" or "Class Members"). Settlement Agreement, ¶ 12.h.

Plaintiff moves for final approval of all payments allocated and provided for by the Settlement, to be paid from the Gross Settlement Amount, including and not limited to, Enhancement Payment in the amount of $15,000.00 to Plaintiff, attorneys' fees in the amount of $315,000.00, which is thirty-five percent (35%) of the Gross Settlement Amount, and reimbursement of litigation costs and expenses in the amount of $106,102.90 (together "Attorneys' Fees and Costs")[2] to Lawyers *for* Justice, PC ("Class Counsel"), Settlement Administration Costs in the amount of $7,950.00 to ILYM Group, Inc. ("ILYM Group" or "Settlement Administrator"), and $75,000.00 allocated to penalties under the Private Attorneys General Act ("PAGA Allocation"), of which $56,250.00 will be paid to the California Labor and Workforce Development Agency ("LWDA") for its portion of the PAGA Allocation

---

[1] A copy of the fully-executed Settlement Agreement is attached as "EXHIBIT 1" to the Declaration of Selena Matavosian in Support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement (Docket No. 161-1).

[2] In the interest of judicial efficiency, and in support of the allocations and requests for the Attorneys' Fees and Costs and Enhancement Payment, Plaintiff respectfully refers the Court to Plaintiff's Motion for Attorneys' Fees and Costs and Enhancement Payment, and papers in support thereof, filed concurrently herewith, on March 18, 2025.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

**LAWYERS *for* JUSTICE, PC**
450 North Brand Boulevard, Suite 900
Glendale, California 91203

("LWDA Payment"), and $18,750.00 will be distributed to all current and former non-exempt employees employed by Defendant in California at any time during the PAGA Period ("PAGA Group Members") on a *pro rata* basis. Settlement Agreement, ¶¶ 12.kk, 17.c, 17.d, 17.e, & 17.f. The Net Settlement Amount is the amount available for distribution to Class Members who did not submit a valid and timely Request for Exclusion ("Settlement Class Members"). Settlement Agreement, ¶ 12.yy.

The Settlement is fair, adequate, and reasonable, and is the product of arm's-length, good-faith negotiations by experienced counsel, presided over by a highly-regarded mediator who is experienced in mediating wage-and-hour class action lawsuits. Most importantly, as of the date of this Motion, *not a single Class Member has objected to any aspect of the Class Settlement, including the requested Attorneys' Fees and Costs, Enhancement Payment, Settlement Administration Costs, or the allocation for PAGA Allocation.*

Accordingly, the Court should grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Settlement Administration Costs and the PAGA Allocation.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For a discussion of relevant procedural history and facts regarding this matter, please see the concurrently filed Declaration of Selena Matavosian in Support of Plaintiff's Motion for Final Approval of Class Action and PAGA Settlement and Motion for Attorneys' Fees and Costs and Enhancement Payment ("Matavosian Decl.") at paragraphs 4(a)-(ggg).

On November 20, 2024, the Court entered an Order Granting Preliminary Approval of Class Action and PAGA Settlement ("Preliminary Approval Order") (Docket No. 169), thereby preliminarily approving the terms of the Settlement, the Class Notice, and the proposed administration procedures and associated deadlines.
///

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

Plaintiff now moves for final approval of the Settlement, Settlement Administration Costs, and the PAGA Allocation, and for final approval of the requested Attorneys' Fees and Costs and Enhancement Payment, as set forth in the concurrently filed Motion for Attorneys' Fees and Costs and Enhancement Payment.

## III.   SUMMARY OF THE SETTLEMENT TERMS AND PLAN OF DISTRIBUTION

Under the terms of the Settlement Agreement, Defendant has agreed to pay a Gross Settlement Amount of $900,000.00. Settlement Agreement, ¶ 12.w.  Subject to approval by the Court, the Net Settlement Amount will be calculated by deducting the following amounts from the Gross Settlement Amount: (1) the Court-approved Attorneys' Fees and Costs, consisting of attorneys' fees in the amount of 35% of the Gross Settlement Amount (equal to $315,000.00) and reimbursement of litigation costs and expenses in the amount of $106,102.90 to Class Counsel; (2) the Court-approved Enhancement Payment in the amount of $15,000.00 to Plaintiff Nelson Ramirez; (3) Settlement Administration Costs in the amount of $7,950.00 to ILYM Group; and (4) the PAGA Allocation in the amount of $75,000.00. *Id.*, ¶¶ 17.c, 17.d, 17.e, & 17.f. In the event the allocations towards each of these categories are awarded in full, the Net Settlement Amount that will be available to be allocated to Settlement Class Members is estimated to be at least $380,947.10, and there is no reversion to Defendant.[3] *Id.*, ¶¶ 12.ee & 12.ww. The entire Net Settlement Amount will be distributed to Settlement Class Members based upon their Qualifying Workweeks during the Class Period, and the entire PAGA Allocation will be distributed seventy-five percent (75%) to the California Labor and Workforce Development Agency

---

[3] This amount is higher than the amount stated in Paragraph 14 of the accompanying Declaration of Amanda Howard of ILYM Group, Inc. Regarding Notice and Settlement Administration ("ILYM Group Declaration" or "ILYM Group Decl") because the Settlement Administrator's calculation assumes that Class Counsel will obtain litigation costs and expenses in the maximum amount of $110,000.00, which is allocated under the Settlement. However, Class Counsel seeks the amount of only $106,102.90 for reimbursement of litigation costs and expenses, and the difference of $3,897.10 will remain part of the Net Settlement Amount.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

("LWDA") ("LWDA Payment") and twenty-five percent (25%) to PAGA Group Members ("PAGA Group Civil Penalties Fund") based on their Qualifying PAGA Pay Periods during the PAGA Period. *Id*., ¶¶ 18 & 19. The Class Period is defined as the period from November 3, 2018 through January 12, 2024. *Id*., ¶ 12.j. The PAGA Period is defined as the period from February 17, 2023 through the February 15, 2024. *Id*., ¶ 12.ll.

Settlement Class Members will be paid a *pro rata* share of the Net Settlement Amount ("Individual Settlement Share") based upon the number of weeks each Class Member was employed by Defendant as a non-exempt employee in California in which they worked at least one shift, at any time during the Class Period, excluding any weeks during which a Class Member was on a leave of absence or otherwise not working ("Qualifying Workweeks"). Settlement Agreement, ¶¶ 12.y & 12.qq. After final approval of the Settlement, the Settlement Administrator will divide the final Net Settlement Amount by the Qualifying Workweeks of all Settlement Class Member to yield the "Final Workweek Value," and multiply each Settlement Class Member's individual Qualifying Workweeks by the Final Workweek Value to yield his or her Individual Settlement Share. *Id*., ¶ 18.b.

PAGA Group Members will be paid a *pro rata* share of the PAGA Group Civil Penalties Fund ("Individual PAGA Payment") based on the number of pay periods each PAGA Group Member was employed by Defendant as a non-exempt employee in California in which they worked at least one shift, at any time during the PAGA Period, excluding any pay periods during which a PAGA Group Member was on a leave of absence or otherwise not working ("Qualifying PAGA Pay Periods"). Settlement Agreement, ¶¶ 12.z & 12.rr. After final approval of the Settlement, the Settlement Administrator will divide the final PAGA Group Civil Penalties Fund ($18,750) by the total number of Qualifying PAGA Pay Periods worked by PAGA Group Members to yield the "Final PAGA Pay Period Value," and multiply each

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

PAGA Group Member's individual Qualifying PAGA Pay Periods by the Final PAGA Pay Periods Value to yield his or her Individual PAGA Payment. *Id.*, ¶ 19.b.

Class Members had forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator ("Response Deadline") to submit a written request to be excluded from the Class Settlement ("Request for Exclusion"), written objection to the Class Settlement ("Notice of Objection"), and/or dispute to Qualifying Workweeks and/or Qualifying PAGA Pay Periods. Settlement Agreement, ¶ 12.ff, 12.uu, & 12.vv. In the event that a Class Notice was re-mailed to a Class Member, the Response Deadline for that Class Member shall be extended by fifteen (15) calendar days. *Id.*, ¶ 12.vv. The Response Deadline was February 10, 2025 and the deadline for re-mailed Class Notices was February 25, 2025. IYLM Group Decl., ¶ 10. As of the date of this motion, the Settlement Administrator has not received any Requests for Exclusion, Notices of Objection, or disputes to Qualifying Workweeks and/or Qualifying PAGA Pay Periods from Class Members. *Id.*, ¶¶ 11-13.

Each Individual Settlement Share will be allocated as follows: thirty percent (30%) as wages and seventy percent (70%) as interest, penalties, and non-wage damages. Settlement Agreement, ¶ 35. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to interest and penalties will be reported on an IRS Form-1099 by the Settlement Administrator. Ibid. The Settlement Administrator will withhold the employee's share of taxes and withholdings with respect to the wages portion of the Individual Settlement Shares, and issue checks to Settlement Class Members for their Individual Settlement Payment (i.e., payment of their Individual Settlement Share net of these taxes and withholdings). Ibid. Separately and in addition to the Gross Settlement Amount, Defendant shall be solely responsible for the timely payment of the employer's portion of payroll taxes and contributions with respect to the wages portion of Individual Settlement Shares ("Employer Taxes"). *Id.*, ¶ 33. Each Individual PAGA

Payment will be allocated entirely as penalties, interest, and non-wage damages, and will thus be reported on an IRS Form-1099 by the Settlement Administrator. *Id.*, ¶ 36.

Each Individual Settlement Payment and Individual PAGA Payment will be valid and negotiable for one hundred and eighty (180) calendar days from the date the checks are issued, and thereafter, shall be cancelled. Settlement Agreement, ¶ 26. All funds associated with such cancelled checks will be transmitted to the California State Controller Unclaimed Property Fund in the name of the Settlement Class Member or PAGA Group Member for whom the funds are designated. Ibid.

## IV.  THE SETTLEMENT ADMINISTRATION PROCESS

The Court-appointed Settlement Administrator, ILYM Group, has taken all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's Preliminary Approval Order.

On November 22, 2024, ILYM Group received the Court approved text for the Class Notice from Class Counsel. IYLM Group Decl., ¶ 4.

On December 9, 2024, ILYM Group received the class data file from counsel for Defendant, which contained each Class Members' and PAGA Group Members': (1) full name; (2) last known address; (3) last known telephone number (if available); (4) Social Security Number; (5) Qualifying Workweeks; and (6) Qualifying PAGA Pay Periods (if any) (collectively, "Class Data and List"). IYLM Group Decl., ¶ 5. The Class Data and List was uploaded to ILYM Group's database and checked for duplicates and other possible discrepancies. Ibid. The Class Data and List contained unique records for three hundred eighteen (318) individuals who worked a total of 29,251 Qualifying Workweeks. Ibid. Of the three hundred eighteen (318) individuals, one hundred eighty-five (185) were identified as PAGA Group Members who worked a total of 3,241 Qualifying Pay Periods. Ibid.

ILYM Group processed all three hundred eighteen (318) names and addresses contained in the Class Data and List against the National Change of Address

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing of the Class Notice. ILYM Group Decl., ¶ 7. The NCOA contains requested change of addresses filed with the USPS. Ibid. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Class Notice. Ibid. To the extent that no updated address was found in the NCOA database, the original address provided by counsel for Defendant was used for the mailing of the Class Notice. Ibid.

On December 26, 2024, the Class Notice was mailed, in both English and Spanish, via U.S First Class Mail, to all three hundred eighteen (318) individuals identified as Class Members and PAGA Group Members in the Class Data and List. ILYM Group Decl., ¶ 8.

As of the date of this Motion, forty-one (41) Class Notices were returned to ILYM Group.  ILYM Group Decl., ¶ 9. Zero (0) Class Notices were returned with a forwarding address. Ibid. ILYM Group performed a computerized skip trace on the forty-one (41) returned Class Notices that did not have a forwarding address, in an effort to obtain an updated address for the purpose of re-mailing the Class Notice. Ibid. As a result of this skip trace, twenty-five (25) updated addresses were obtained and the Class Notices were promptly re-mailed to those Class Members, via U.S. First Class Mail. Ibid. A total of sixteen (16) Class Notices have been deemed undeliverable as no updated addresses were found notwithstanding the skip tracing. Ibid.

The Response Deadline was February 10, 2025. ILYM Group Decl., ¶ 10. The deadline for a re-mailed Class Notice was February 25, 2025. Ibid. As of the date of this Motion, the Settlement Administrator has not received any Requests for Exclusion, Notices of Objection or disputes to Qualifying Workweeks and/or Qualifying PAGA Pay Periods from Class Members and/or PAGA Group Members. *Id*., ¶¶ 11, 12, & 13.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

To date, there are three hundred thirteen (316) Class Members who did not submit a valid and timely Request for Exclusion and are therefore deemed to be Settlement Class Members, representing 100% of the Class. ILYM Group Decl., ¶ 15. Pursuant to the terms of the Settlement, the Net Settlement Amount of approximately $380,947.10 will be distributed to Settlement Class Members in accordance with the terms of the Settlement. Settlement Agreement, ¶ 12.ee.[4] The highest Individual Settlement Share is currently estimated to be approximately $3,390.11 and the average Individual Settlement Payment is currently estimated to be approximately $1,193.20. ILYM Group Decl., ¶ 16.[5] The highest Individual PAGA Payment is currently estimated to be approximately $156.20 and the average Individual PAGA Payment is currently estimated to be approximately $101.35. *Id.*, ¶ 18.

## V.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.

The trial court has broad discretion to determine whether a class action settlement is fair and reasonable. *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 52. To determine whether the settlement is fair and reasonable, courts consider relevant factors such as:

> the strength of plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801. "The list of factors is not exclusive and the court is free to engage in a balancing and weighing of the

---

[4] See n.3, *supra*.

[5] The actual average and highest Individual Settlement Share will be larger than the amounts stated in the ILYM Group Declaration because the Net Settlement Amount is larger due to Class Counsel's request for reimbursement of litigation costs and expenses in an amount that is less than $110,000.00 (the difference between the amount sought and the amount authorized under the Settlement, i.e., $3,897.10, will be part of the Net Settlement Amount). See n.3, *supra*.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1  factors depending on the circumstances of each case." *Wershba v. Apple Computer,*

2  *Inc.* (2001) 91 Cal.App.4th 224, 245.   "Due regard should be given to what is

3  otherwise a private consensual agreement between the parties." *Dunk, supra,* 48

4  Cal.App.4th at 1801.

5       The proponent of the settlement has the burden to show that it is fair and

6  reasonable. *Wershba, supra,* 91 Cal.App.4th at 245.  At the final approval stage, a

7  presumption of fairness exists where, as here: "(1) the settlement is reached through

8  arm's-length bargaining; (2) investigation and discovery are sufficient to allow

9  counsel and the court to act intelligently; (3) counsel is experienced in similar

10  litigation; and (4) the percentage of objectors is small." *Dunk, supra,* 48 Cal.App.4th

11  at 1802.  In reviewing a class settlement, the court need not reach any ultimate

12  conclusions on the issues of fact and law that underlie the merits of the dispute.

13  *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th

14  1135, 1146.  The inquiry is not whether the settlement agreement is the best one that

15  class members could have possibly obtained, but whether the settlement, taken as a

16  whole, is "fair, adequate, and reasonable." *Chavez v. Netflix, Inc.* (2008) 162

17  Cal.App.4th 43, 55.  A settlement need not obtain 100 percent of the damages sought

18  in order to be fair, reasonable, and ultimately, meaningful. *Wershba, supra,* 91

19  Cal.App.4th at 251.   Even if the proposed settlement affords relief that is

20  substantially narrower than it would be if the cases were to be successfully litigated,

21  that is no bar to a class settlement because the public interest may indeed be served

22  by a voluntary settlement in which each side gives ground in the interest of avoiding

23  prolonged litigation. *Id.*

24  **A.**   **The Settlement Resulted from Arm's-Length Negotiations Based**
25      **Upon Extensive Investigation and Discovery.**

26       The Parties actively litigated the case since it commenced on November 3,

27  2021. Class Counsel conducted significant investigation and formal and informal

28  discovery into the facts of the case to assess the veracity, strength, and scope of the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

claims, and was preparing for class certification and trial prior to reaching the Settlement. Matavosian Decl., ¶ 7.

The Parties conducted significant investigation and formal and informal discovery into the facts of the case, and reviewed and analyzed a large volume of information, data, and documents obtained from Plaintiff, Defendant, and other sources, in the course of litigation and in connection with mediation and settlement negotiations. Matavosian Decl., ¶ 6. Class Counsel engaged in the initial disclosures process, served multiple sets of formal written discovery requests onto Defendant (specifically, Requests for Production of Documents (Set One), Special Interrogatories (Sets One, Two, and Three), and Requests for Admission (Sets One and Two)), and noticed the depositions of Defendant's Person Most Knowledgeable designees along with accompanying requests for production of documents, on Defendant. Ibid. Class Counsel also served multiple sets of formal written discovery requests onto former defendant HV Global Group, Inc. (specifically, Requests for Production of Documents (Set One), and Special Interrogatories (Sets One and Two)) and noticed the depositions of former defendant HV Global Group, Inc.'s Person Most Knowledgeable designees along with accompanying requests for production of documents, on former defendant HV Global Group, Inc. Ibid. Class Counsel served notices of deposition of several non-party witnesses, and attended the depositions of several non-party witnesses. Ibid. Class Counsel also worked with Plaintiff to prepare and provide responses and supplemental responses to formal written discovery served by Defendant (specifically, Requests for Production of Documents (Set One) and Interrogatories (Set One)). Ibid. Class Counsel also prepared for and took the deposition of Defendant's Person Most Knowledgeable witness and nine (9) non-party witnesses and prepared for and defended the deposition of Plaintiff, six (6) non-party witnesses, and Plaintiff's expert, Richard Drogin. Ibid. The volume of information, documents, and data that Class Counsel reviewed and analyzed included and was not limited to: employment records of

Plaintiff, a detailed sampling of Plaintiff's time and pay data, Defendant's collective bargaining agreements, Defendant's Associate Handbook, internal memoranda, new hire orientation checklists, job description, earning statements, company agreements and acknowledgments (including, but not limited to, 2016 Policy Acknowledgment, Attendance Disciplinary Notice, Acknowledgment of Employee Handbook, Voluntary Dispute Resolution Agreement, Mandatory Dispute Resolution Agreement, Dispute Resolution Agreement, and Acknowledgments of Explanation of Interview), forms (including, but not limited to, Employee Performance Review, Hourly Transfer/Promotion Request Form, Franchise Request Form, Meal Period Waiver, Waiver of Need to Authorize Certain Paid Meal Breaks, Waiver of Need to Authorize Certain Unpaid Meal Breaks, and Payroll Adjustment Form), procedures (including, but not limited to, On-Call Procedures) and policies (including, but not limited to, Authorization to Take Meal Breaks and Rest Breaks and Recognition of Duty to Report Inconsistent Activity, and Parking Policy), among other information and documents. Ibid. Class Counsel had the opportunity to interview and obtain information from Plaintiff and percipient witnesses, and reviewed and analyzed a volume of information, documents, and data obtained from Plaintiff, Defendant, and other sources. Ibid. Class Counsel also developed liability, damages, violation, and penalties valuation models in the course of litigation and in connection with mediation and settlement negotiations and met and conferred with Defendant's counsel on numerous occasions, e.g., to discuss issues relating to the pleadings, case management, discovery, motion practice, and the production of information, documents, and data in the course of litigation and in connection with the mediation and settlement negotiations. Ibid. Other work performed by Class Counsel included, and was not limited to, case strategy and analysis; extensive motion practice (including discovery motions); drafting, reviewing, and revising pleadings, motion-related papers, mediation brief, and settlement-related papers; and preparing for

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

court proceedings, depositions, mediation and settlement negotiations, among other tasks. Ibid.

After conducting formal and informal discovery and investigation into the facts of the case, the Parties participated in a formal, full-day mediation on October 12, 2023 conducted by Deborah Crandall-Saxe Esq., who is well-respected mediator experienced in mediating complex labor and employment matters. *Id*., ¶ 9. In the course of the mediation and settlement negotiations, the Parties exchanged information, documents, and data, and discussed all aspects of the case, including and not limited to, the risks and delays of further litigation, the risks to the Parties of proceeding with class certification and trial, the law relating to class certification, manageability, off-the-clock theory, meal and rest periods, representative PAGA claims, and wage-and-hour law and enforcement, as well as the evidence produced and analyzed, and the possibility of appeals, among other things. Ibid. During all settlement discussions, the Parties conducted their negotiations at arm's length in an adversarial position. Ibid. Arriving at a settlement that was acceptable to the parties was not easy. Ibid. Defendant contended that individualized questions of fact predominate over any common issues, and these issues would pose challenges to class certification and representative adjudication. Ibid. Defendant and its counsel felt strongly about Defendant's ability to avoid class certification and representative adjudication and prevail on the merits, while Plaintiff and Class Counsel believed that they would be able to obtain class certification and prevail at trial. Ibid. With the aid of the mediator's evaluation, the Parties ultimately agreed that the case was well-suited for settlement given the legal issues relating to Plaintiff's principal claims, as well as the costs and risks to the Parties that would attend further litigation. Ibid.

The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. Class Counsel analyzed a large amount of information, data, and documents obtained from Plaintiff, Defendant, and other sources that provided

a critical understanding of the nature of the work performed by Class Members and PAGA Group Members, as well as Defendant's operations and employment policies, practices, and procedures. Matavosian Decl., ¶ 8. Class Counsel also performed significant research regarding applicable law, which is evolving as it relates to class certification, manageability, off-the-clock theory, meal and rest periods, representative PAGA claims and penalties, wage-and-hour law and enforcement, Plaintiff's claims and allegations, and Defendant's defenses thereto, as well as facts discovered. Ibid. The Settlement Agreement reached was based on this large volume of facts, evidence, and investigation. *Id*., ¶¶ 6-9. Additionally, Class Counsel has extensive experience in handling complex wage-and-hour matters, including significant experience in employment class action litigation. *Id*., ¶¶ 16-22.

**B.**    **The Risks Inherent in Continued Litigation Favor Final Approval of the Settlement.**

The Settlement, which provides for a Gross Settlement Amount of $900,000.00, represents a fair, adequate, and reasonable resolution of the case, given the risks inherent in litigating class and representative claims through certification proceedings, trial, and/or appeals. Matavosian Decl., ¶¶ 10 & 25. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of preparing for mediation and ongoing settlement negotiations. *Id*., ¶¶ 5-9. Had the action not settled, Defendant would have vigorously challenged class certification, manageability of representative adjudication, and liability. Defendant contended that individualized questions of fact predominated over any common issues, and these issues would pose challenges to certification and representative adjudication. Defendant would have likely argued again at trial, if any, that Plaintiff's claims were not appropriate for class-wide and/or representative adjudication. On the other hand, Defendant also faced the risk of the Court certifying a class and allowing a jury to decide Plaintiff's claims on a class-wide or

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

1  representative basis. Additionally, preparation for trial would have been expensive

2  for all parties.

3      It is preferable to reach an early resolution of a dispute because such

4  resolutions save time and money that would otherwise go to litigation. If this matter

5  had settled after further litigation, the settlement amount would have taken into

6  account the additional costs incurred, and there might have been less money

7  available for Class Members, PAGA Group Members, and the State of California

8  after all was said and done. This is not just an abstract contention. The risks and

9  expenses of further litigation outweighed any benefit that might have been gained

10 otherwise. These risks of further litigation include a determination that the claims

11 were unsuitable for class treatment and/or representative adjudication, failure to

12 obtain certification, class de-certification after certification of a class, allowing a jury

13 to decide the claims asserted in the case, and the real possibility of no recovery after

14 years of litigation. Additionally, the Parties were moving into the phase of the

15 litigation where they would have to conduct a significant amount of additional

16 discovery, including and not limited to, additional depositions of Defendant's Person

17 Most Knowledgeable designees, expert witnesses, and percipient witnesses, such as

18 managers, supervisors, and other current and former employees throughout the State

19 of California. Additional discovery would have certainly arisen, which would have

20 cost the Parties additional time and money. In contrast, the Settlement provides real

21 and significant benefits for the Class here and now, while avoiding the further

22 expenses, risks, and delay of prolonged litigation with only the possibility of

23 recovery.

24     It would be grossly inefficient for such a large class of current and former

25 employees to bring individual actions to recover from Defendant for the alleged

26 violations of wage-and-hour laws. Moreover, the potential individual recovery that

27 could be obtained by a Class Member would not be significant enough to provide

28 him or her with the incentive to sue. By granting final approval of the Settlement,

the Court can approve a resolution that provides a certain and substantial recovery for Class Members, the State of California, and PAGA Group Members.

### C.    The Settlement Is Fair, Reasonable, and Adequate.

The Settlement, which provides for a Gross Settlement Amount of $900,000.00, represents a fair, reasonable, and adequate resolution of the case. The Settlement was calculated using information and data uncovered through extensive case investigation, formal and informal discovery, and the exchange of information in the context of preparing for mediation and conducting ongoing settlement negotiations. The Settlement takes into account the potential risks and rewards inherent in any case and, in particular, in this case. Moreover, considering all of the facts in the case, the Gross Settlement Amount represents a considerable recovery.

Even after deducting attorneys' fees in the amount of $315,000.00, litigation costs and expenses in the amount of $106,102.90, Enhancement Payment in the amount of $15,000.00, Settlement Administration Costs in the amount of $7,950.00, and the PAGA Allocation in the amount of $75,000.00 from the Gross Settlement Amount of $900,000.00, the Net Settlement Amount is currently estimated to be $380,947.10. ILYM Group Decl., ¶ 14.[6] Under the Settlement Agreement, the Gross Settlement Amount will be fully paid out, in accordance with the terms of the Settlement. As discussed in Section III, *supra*, each Settlement Class Member will be paid a *pro rata* share of the Net Settlement Amount based on the number of Qualifying Workweeks he or she was employed by Defendant during the Class Period, and each PAGA Group Member will be paid a *pro rata* share of the PAGA Group Civil Penalties Fund based on the number of Qualifying PAGA Pay Periods he or she was employed by Defendant during the PAGA Period. Settlement Agreement, ¶¶ 18 & 19. To date, there are three hundred thirteen (316) Settlement Class Members and one hundred eighty-five (185) PAGA Group Members. ILYM Decl., ¶¶ 15. The highest Individual Settlement Share is currently estimated to be

---

[6] See n.3, *supra*.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

approximately $3,390.11 and the average Individual Settlement Payment is currently estimated to be approximately $1,193.20. ILYM Group Decl., ¶ 16.[7] The highest Individual PAGA Payment is currently estimated to be approximately $156.20 and the average Individual PAGA Payment is currently estimated to be approximately $101.35. *Id.*, ¶ 18. These are significant individual recoveries, particularly in light of the risks of litigation.

At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by experienced and competent class counsel." *In re American Bank Note Holographics, Inc., Securities Litigation* (S.D.N.Y. 2001) 127 F.Supp.2d 418, 429-30. The *pro rata* allocation here is a fair and reasonable way to distribute the Net Settlement Amount. In light of the above considerations, Class Counsel believes that the Settlement as a whole is fair, reasonable, and adequate, and in the best interest of the Class Members, the State of California, and PAGA Group Members. Matavosian Decl., ¶ 25. Although the recommendations of Class Counsel are not conclusive, the Court can properly take the recommendations into account, particularly if Class Counsel appears to be competent, has experience with this type of litigation, and significant discovery and investigation have been completed, as is the case here. Conte & Newberg, *Newberg on Class Actions* (4th Ed., 2002) § 11.47. Accordingly, the Court should grant final approval of the Settlement.

**D.    The Class Was Represented by Competent Counsel.**

Class Counsel has extensive experience in employment class action law and complex wage-and-hour litigation. Matavosian Decl., ¶¶ 16-22. Lawyers *for* Justice, PC has been appointed class counsel in numerous complex wage-and-hour cases, and has recovered millions of dollars for individuals in California. Ibid. Both Parties' counsel were capable of assessing the strengths and weaknesses of the Class Members' claims against Defendant and the benefits of the Settlement under the

---

[7] See n.5, *supra*.

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

circumstances of the case and in the context of a private, consensual settlement agreement.

**E.     There Are No Notices of Objection to the Class Settlement.**

The Settlement has been well received by the Class – ***not a single Class Member objected to the Class Settlement.*** ILYM Group Decl., ¶ 12. Specifically, no objections have been made as to the Gross Settlement Amount or requested Attorneys' Fees and Costs, Enhancement Payment, Settlement Administration Costs, or the allocation for the PAGA Allocation. California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final approval. *Wershba*, *supra*, 91 Cal.App.4th at 250-51 (final approval granted despite 20 objectors); *7-Eleven Owners*, *supra*, 85 Cal.App.4th at 1152-53 (final approval granted despite 9 objectors).

Here, the lack of any objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair, reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety. *Dunk*, *supra*, 48 Cal.App.4th at 1802.

**VI.   THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED.**

As set forth in the accompanying ILYM Group Declaration, the total costs incurred and to be incurred by ILYM Group for the notice and settlement administration process are $7,950.00. ILYM Group Decl., ¶ 19.  The costs incurred and to be incurred include, but are not limited to, (a) translating the Class Notice into Spanish; (b) printing and mailing the Class Notice, in both English and Spanish, to Class Members and PAGA Group Members; (c) receiving and processing Requests for Exclusion, Notices of Objection and disputes to Qualifying Workweeks and/or Qualifying PAGA Pay Periods submitted by Class Members; (d) resolving Class Members' disputes over the number of Qualifying Workweeks and/or Qualifying PAGA Pay Periods Defendant has on record of them working during the Class Period

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203

and PAGA Period, which was pre-printed on their individualized Class Notice; (e) establishing and maintaining a Qualified Settlement Fund account and calculating Individual Settlement Shares and Individual PAGA Payments; (f) processing and mailing payments to Plaintiff, Class Counsel, Settlement Class Members, and PAGA Group Members; (g) handling tax withholdings as required by the Settlement and the law; (h) preparing, issuing, and filing tax returns and other applicable tax forms; (i) handling the distribution of any unclaimed funds pursuant to the terms of the Settlement; and (j) performing other tasks as the Parties mutually agree to and/or the Court orders ILYM Group to perform. *Id.*, ¶ 3.

Accordingly, the Court should grant final approval of payment to ILYM Group, a necessary third-party administrator, for its handling of the notice and settlement process, in the amount of $7,950.00.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement, and all payments allocated and provided for by the Settlement Agreement, including and not limited to the Individual Settlement Payment to Settlement Class Members, Settlement Administration Costs, and the PAGA Allocation, in their entirety, as sought herein.

Dated: March 18, 2025          **LAWYERS *for* JUSTICE, PC**

By: _____
Selena Matavosian
*Attorney for* Plaintiff and the Class

LAWYERS *for* JUSTICE, PC
450 North Brand Boulevard, Suite 900
Glendale, California 91203